THE BALTIMORE UNION PASSENGER RAILWAY COM-
PANY *vs.* THE MAYOR AND CITY COUNCIL OF BAL-
TIMORE.

*Park tax on Gross earnings of Passenger railways in the City
of Baltimore—Railway line extending Outside the City—
Apportionment of Gross Earnings—Evidence—Section 9
of Ordinance No. 150 of 1880.*

A street passenger railway company was, by ordinance No. 150 of
the ordinances of the City of Baltimore of 1880, (Rev. City Code
1885, p. 323) authorized to construct certain street passenger
railways in the streets of the city, subject to certain conditions
as follows, to wit: "To pay the city register for the use of the
park fund, quarterly, twelve *per centum* of the gross receipts
accruing from passenger travel within the city limits." By the
Act of 1882, chapter 229, the Legislature fixed the rate of fare,
and reduced the park tax to nine *per centum* of the gross receipts.
The company had three tracks, of which two were entirely within
the city limits, but the other extended a half mile beyond.
Certain portions of the tracks were common to each line.
There was no separate fare for the part of the road lying out-
side the city limits; but the fare paid outside the city entitled the
passenger to ride to any part of the city on that line, and, by a
free transfer, to any part of the city traversed by any one of
said lines, and *vice versa* for persons getting on in the city and
going to the county. In a suit against said company to recover
said park tax on its gross receipts, it appeared from the answer of
the company to a bill of discovery filed in aid of said suit, and
from the testimony of its officers, that they thought it impracti-
cable, by the methods and agencies used by the company, to
keep a separate account of the fares received from the part of its
road lying beyond the city limits. HELD:

1st. That any method which might be adopted to ascertain a
proper deduction from the total gross receipts of the company,
to represent the earnings of that part of its line which was out-
side the city limits, must involve a calculation on the basis of
the gross receipts from all its lines.

Balto. Union Pass. Railway Co. *vs.* Mayor, &c., of Baltimore.

2nd. That the testimony of witnessess who rode twice or more a day on the line which extended beyond the city limits, and who stated their estimate from casual observation as to the proportion of passengers on that line who got on in the county, and rode into the city, or in the city and rode into the county, compared with that of those who began and ended their rides in the city, but who did not, and could not, tell at what point outside the city the passengers they observed got on, or where they got off in the city, could not of itself supply a safe method of ascertaining the real earnings of that part of the track lying outside the city.

3rd. That in the absence of a more accurate basis of calculation, the greatest sum to which the defendant was entitled, as a deduction from its total gross receipts from passenger travel during the period embraced in the suit, in respect of its passenger travel outside the city limits, was that sum which bore the same proportion to said total gross receipts, as the number of miles travelled by said cars outside the city limits bore to the total mileage travelled by said cars.

4th. That in the absence of evidence showing how far each passenger who rode on the cars travelled, the only way to approximate a fair basis of settlement was to act on the assumption that each part of each line carried as many as any other part.

Section 9 of ordinance No, 150 of 1880, which granted the defendant its privileges, and imposed the tax sued for, provides "That whenever the amount of the gross receipts of any passenger railway company, owning or operating railway tracks in the City of Baltimore, now required to be paid to the city register for the use of the park fund, shall be reduced from twelve *per centum* to any less amount, the said reduction shall apply to the railways hereby authorized to be constructed." HELD:

That the fact that the city had accepted from other railway companies less than was due on account of said tax by way of compromise for the purpose of ending certain suits and controversies over amounts claimed as due, did not constitute a reduction of the *per centum* of tax within the meaning and intention of said ordinance, which would entitle the defendant to a like reduction.

APPEAL from the Circuit Court for Baltimore County.

The case is stated in the opinion of the Court.

Balto. Union Pass. Railway Co. *vs.* Mayor, &c., of Baltimore.

*First, Second, Third, Fourth and Fifth Exceptions,* stated in the opinion of the Court.

*Sixth Exception.* The plaintiff offered the two following prayers:

1. The plaintiff prays the Court to strike out all the evidence offered by the defendant, (the same having been admitted subject to exception,) of the settlements made by the Mayor and City Council of Baltimore, with the People's Passenger Railway Company, the Citizens' Passenger Railway Company, the North Baltimore Passenger Railway Company, the Hall's Springs Railway Company, and all the evidence of the witnesses, House, Keyser, Bowie and Robb, and the written statement relating to the settlement made with the Citizens' Passenger and North Baltimore Passenger Railway Companies; all of said evidence being irrelevant and immaterial to the issues in this case, and also because said settlements are not shown to have been made by valid authority, except as to the settlement made with the Hall's Springs Company, which was made under an ordinance of 1879, passed before the ordinance of 1880, No. 150.

2. If the jury shall find that from the 1st of February, 1885, to the 15th of March, 1887, the defendant ran the three lines of cars mentioned in the evidence, one starting at the intersection of Pratt street and Frederick avenue, and running to the corner of Conway and Light streets, designated as the Pratt street line; one starting on North avenue, near Park avenue, and running by way of John street, Columbia avenue, and other streets, to a point on Washington avenue, designated as the Columbia avenue line; and a third line designated as the Huntingdon avenue line, running from the corner of Huntingdon avenue and Oak street, by way of Maryland avenue and other streets, to the corner of Conway and Light streets; and that the points between which the said Pratt street and Columbia avenue lines run, and their entire

route, was within the then city limits of the city of Baltimore, and that the route of the Huntingdon avenue line was altogether within said city limits, except the portion between the intersection of Maryland and North avenues, and the terminus on Huntingdon avenue; which latter portion was then in Baltimore County; and shall further find that the distance covered by a round trip on the said Pratt street line was 4.43 miles; on the Columbia avenue line, 7.17 miles, and on the Huntingdon avenue line, 5.58 miles; and that from the 1st of February, 1885, to the 31st of December, 1885, the cars of said Pratt street line made on the said route 55,565 round trips, and in doing so travelled 262,822 miles; and that the Columbia avenue line made on its said route 37,728 round trips, and in doing so travelled 270,509 miles; and that the Huntingdon avenue line made on its said route 54,361 round trips, and in doing so travelled 292,462 miles, of which 54,904 miles were on its said route outside of the then city limits, and in doing so there was received by said company from passenger travel from said trips on the Pratt street line $40,288.61; and from said trips on the Columbia avenue line $32,450.09; and from said trips on the Huntingdon avenue line $43,534.68; and that during the year 1886, the cars of the said Pratt street line made on its said route 59,082 round trips, and in doing so travelled 279,457 miles; and that the Columbia avenue line made on its said route 46,183 round trips, and in doing so travelled 331,132 miles, and that the Huntingdon avenue line made on its said route 58,512 round trips, and in doing so travelled 314,794 miles, of which 59,097 miles were on its route outside of the city limits, and in doing so there was received by said company from passenger travel on said trips on the Pratt street line, the sum of $43,526.32; and from said trips on the Columbia avenue line the sum of $39,021.98; and from said trips on the Huntingdon

Balto. Union Pass. Railway Co. *vs.* Mayor, &c., of Baltimore.

avenue line the sum of $50,352.90; and that from the 1st of January, 1887, to the 15th of March, 1887, the cars of the said Pratt Street line made on its route 12,339 round trips, and in doing so travelled 58,563 miles; and that the cars of the Columbia avenue line made on its said route 10,647 round trips, and in so doing travelled 76,339 miles; and that the cars on the Huntingdon avenue line made on its route 12,654 round trips, and in doing so travelled 68,078 miles, of which 12,780 miles were on its said route outside the city limits; and that there was received by said company from passenger travel on the said trips on the Pratt street line, the sum of $9,914.87; and from the said trips on the Columbia avenue line the sum of $8,495; and from the said trips on the said Huntingdon avenue line the sum of $9,686.62; and if the jury shall further find that the fare of a passenger riding on any of said cars was the same irrespective of the distance ridden by said passenger, and whether riding wholly in the city, or partly in the city and partly in the county, then, under the evidence in this case, and upon the true construction of the Acts of Assembly of the State of Maryland and the ordinances of the Mayor and City Council of Baltimore, given in evidence, the greatest sum to which the defendant is entitled as a deduction from its total gross receipts from passenger travel for the period from the 1st of February, 1885, to the 15th of March, 1887, in respect of its passenger travel outside of the city limits, is that sum which bears the same proportion to said total gross receipts as the number of miles travelled by said cars outside of the city limits bears to the aforesaid total mileage travelled by said cars; and if the jury shall find that the total mileage travelled by the cars of the defendant on its said three lines from the 1st of February, 1885, to the 15th of March, 1887, was 1,954,156 miles; and that during the same period that portion of said total mileage of

1,954,156 miles, which was travelled by defendant's cars on that portion of their line which was outside the city limits, was 126,781 miles, and that the total gross receipts of said company from passenger travel on all its said lines during said period was $277,269, then the sum to be deducted from said total gross receipts in respect of its passenger travel outside of said city limits, is to be ascertained as follows, that is to say: as 1,954,156 : 126,781 :: $277,269 : $17,985; which said sum of $17,985 is to be deducted from said sum of $277,269, and upon the remainder, to wit, the sum of $259,284, the plaintiff is entitled to recover nine per cent., less such amount as the defendant has already paid to the plaintiff on account thereof, for the period from the 1st of February, 1885, to the 15th of March, 1887, as shown by the witness Fender.

The defendant offered the four prayers following:

1. That the plaintiff in this case can recover only nine per. cent. on the gross earnings of the defendant's railway within the city limits of Baltimore; and if the jury shall find that said defendant did, during the period embraced in this suit, to wit: from the 1st of February, 1885, to the 15th of March, 1887, pay to the City Register nine per cent. park tax on fifty per cent. of its gross earnings in the county and city, and shall further find from all the evidence, that 50 per cent. of said gross earnings was a fair and proper proportion of such gross receipts earned within the city limits, then the plaintiff is not entitled to recover in this action.

2. That the plaintiff is only entitled to recover nine per cent. on the defendant's gross earnings within the city limits, and if they shall find that the earnings of said defendant company were made within the city and in the county; and that it was impracticable for the defendant in conducting its business to correctly apportion its earnings between the city and the county, then if

their verdict be for the plaintiff, the jury in making up the same shall make such deduction from the entire gross earnings as proven, as they may find from all the evidence in the case to have been earned outside the city limits of Baltimore for the period covered by this suit; and shall also allow for such payments as were made by the defendant on account of its gross earnings during such period.

3. That if the jury shall find that, during the period covered by this suit, to wit, between the 1st of February, 1885, and the 15th of March, 1887, the amounts of the gross receipts of any passenger railway company, owning or operating any railway tracks in the City of Baltimore during that period, required to be paid to the City Register for the use of the park fund, were reduced from the rate of nine per centum of the sum due to the City Register as aforesaid, to any less amount, then the jury are instructed that the defendant is entitled to the lowest reduction made to any of the other passenger railway companies in determining the basis upon which payment should have been made by the defendant to the City Register, under section nine of Ordinance 150, approved Oct. 25th, 1880.

4. That in estimating what amount, if any, shall be deducted from the gross earnings of the defendant railway company, as the sum upon which the nine per cent, park tax shall be calculated, the jury may take into consideration all evidence in the case touching any settlements or deductions made by the plaintiff with other passenger railway companies in said city, liable to said plaintiff for the tax of nine per cent. on their gross earnings.

The Court (FOWLER, J.,) granted the plaintiff's prayers, and rejected the defendant's prayers. The defendant excepted, and the verdict and judgment being against it, appealed.

Balto. Union Pass. Railway Co. *vs.* Mayor, &c., of Baltimore.

The cause was argued before ALVEY, C. J., MILLER, IRVING, BRYAN, and McSHERRY, J.

*George Dobbin Penniman,* for the appellant.

*Bernard Carter, City Solicitor,* for the appellee.

IRVING, J., delivered the opinion of the Court.

The appellee sued the appellant in the Superior Court of Baltimore City, and the case was removed to Baltimore County for trial. The declaration sets up a claim for park tax from February 1st, 1885, to March 15th, 1887.

The appellant was incorporated under the General Railway Law of the State, and was, by ordinance No. 150 of the ordinances of the City of Baltimore of 1880, (Rev. City Code of 1885, page 323,) authorized to construct certain street passenger railways in the streets of the city, subject to certain conditions, as follows, to wit: "to pay to the City Register for the use of the park fund, quarterly, twelve *per centum* of the gross receipts accruing from passenger travel within the city limits; and for each car in daily use upon said railways a license tax of five dollars shall be paid yearly to the City Comptroller."

By the Act of 1882, chapter 229, the Legislature assumed control of the whole matter, fixed the fare at five cents for adults, and three cents for children, and reduced the park tax from twelve to *nine per centum* of the gross receipts.

The appellant had three railway lines, viz: The Huntingdon avenue line, Columbia avenue line, and the Pratt Street line. The two last named were wholly within the city limits; but the first extended beyond the city limits for the distance of one-half mile; and this fact has given rise to this controversy. For this half mile of track, beyond the city limits, of the Huntingdon

avenue line, the company deducted one-half the gross receipts of the company from all their lines, and paid the city only the nine per cent. tax on the other half of the receipts. To this claim on the part of the appellant of the right to deduct one-half of the whole receipts of the company from all their lines, because of this half mile of track of one of the lines which is outside the city limits, and to pay no more park tax than what the other half yields, the appellee objected, and brought this suit to recover such sum in addition as the law entitles the city to receive.

The Huntingdon avenue line travels 2.69 miles, one-half mile thereof only being outside the city. The distance travelled by a car of the Columbia avenue line is 3.58 miles, wholly within the city, and the Pratt street line, wholly in the city, travels 2.36 miles. The aggregate of car mileage is 8.63 miles; but, as certain portions of the tracks are common to each, making allowance for the distance travelled on common tracks, the total of track mileage is only 7.08 miles.

Inasmuch as one of these lines extends beyond the city, and into Baltimore County, the gross receipts from or on account of that portion of the track which is without the city limits ought not to pay any part of the *nine per centum* tax which has been imposed for the privilege accorded by the city to the appellant of using its streets for railway purposes. But it is self-evident that an arbitrary deduction of one-half the gross receipts of all the lines of the appellant to represent the revenues derived from the one-half mile of track outside the city cannot be right. To deduct one-half of the gross earnings before computing the tax to be paid, as representing the revenues derived from that half mile outside the city limits, which is only about one-sixteenth of the whole mileage of the appellant, is suggestive of such an enormous amount of work done and money earned by that

portion of the road, as compared with the rest of the mileage within the city, as taxes credulity too heavily for acceptance as a fair basis of settlement with the city. Having accepted their privileges on the condition of paying this tax upon the gross receipts, it *was the duty* of the appellant to furnish an accurate statement of such receipts. Upon a bill for discovery in aid of this suit, the total gross receipts have been given in response to the demand as $277,269; but that amount includes the receipts from the county part of the tracks, of which they say they have kept no account separate and apart from the other parts of their lines. In their answer to the bill for discovery, and by the testimony of their officers, it is shown, that they thought it impracticable by the methods and agencies used by the company, to keep a separate account of the fares received from that part of the road.

Having no separate fare for the part of the road lying outside the city limits, but the five cents paid outside the city entitling the passenger to ride to any part of the city on that line, and by a free transfer to any part of the city traversed by any one of the lines of the appellant, and *vice versa* for persons getting on in the city and going to the county, it is clear that some method must be adopted to determine with reasonable accuracy what proportion of the revenues shall be deducted as not liable to tax. The evidence shows that a very small part of the fares received were paid for rides begun and ended on the county part of the track. The five cents paid, therefore, in very much the larger number of instances, represented rides wholly in the city, and those begun in the county and ended in the city, or in the city and ended in the county; and inasmuch as portions of the tracks in the city were travelled by each line of cars; and inasmuch as the system of transfers from one line to another prevailed, by which passengers could start on

one line and end their trip on another, it is plain that any method which might be adopted to ascertain a proper deduction from the total gross receipts to represent the earnings of that part of the Huntingdon avenue line which was outside the city limits, must involve a calculation on the basis of the gross receipts from all the lines.

The first five exceptions relate to evidence offered on behalf of the appellant which was rejected. By that evidence it was sought to establish a proper basis of computation, on the ground that the larger part of the passengers on that line got on in the county and rode into the city, or in the city and rode into the county, than began and ended their rides in the city. Witnesses who rode on that line twice or more a day stated their estimates from casual observation as to the proportion of passengers so doing. That the exclusion of such evidence was no ground of error is apparent from several considerations. If it was impracticable, as the company stated, to keep an accurate account by a record of the passengers riding on the road, when, and where they entered, and where they alighted, it is perfectly clear, that the testimony of passengers who only observed now and then, and who did not tell and could not tell at what point outside the city the passengers they observed got on, or where they got off in the city, or *vice versa*, could not supply a safe method of ascertaining what was wanted. It would not only be the merest guess, resulting from only occasional observation, but it gave no possible help toward determining what proportion of the journeys of these passengers was made on the tracks in the city, and the track outside the city. Certainly, unless some method of reaching that proportion was supplied by proof in addition to the statements of those witnesses, their statements would not enable a jury to form a reasonably fair basis for the jury to determine what was the real earnings of Baltimore County track.

The sixth exception brings for review the action of the Court on the prayers submitted by the respective parties; and as the second prayer on the part of the plaintiff was adopted by the Court below, as supplying to the jury the true method of making the ascertainment of proper allowance for the receipts on account of the track outside of the city limits, we will consider that first. The evidence having supplied the means of determining with certainty how many miles each car of the company, on each line, travelled during the period involved in the suit, by proof of how many round trips each car on each line made during the period sued for; and that proof enabling the jury to find with accuracy how many miles were travelled by the cars of the company upon the half mile of track of the Huntingdon avenue line outside the city; and being given the total gross receipts of all the lines, the Court gave the jury an instruction for an arithmetical proportion, by which the half mile track's part of the gross receipts for fares were ascertainable. This instruction, in the absence of a better one, supplied by actual account of each fare paid in the county for a ride begun there and ended there, or begun there and ended in the city, and giving the distance traversed in the county and in the city, and *vice versa*, seems to us to reach the justice of this case, and to be free from objection. The rule, thus set up, is as follows: "The greatest sum to which the defendant is entitled, as a deduction from its total gross receipts from passenger travel during the period from February 1st, 1885, to March 15th, 1887, (the period embraced in this suit,) in respect of its passenger travel outside the city limits, is that sum which bears the same proportion to said total gross receipts, as the number of miles travelled by said cars outside the city limits bears to the total mileage travelled by said cars; and if the jury shall find that the total mileage travelled by the cars

of the defendant on its said three lines from February 1st, 1885, to March 15th, 1887, was 1,954,156 miles, and that during the same period that portion of said total mileage of 1,954,156 miles which was travelled by the defendant's cars on that portion of their line which was outside the city limits was 126,781 miles, and that the total gross receipts of the said company, from passenger travel on all its said lines during said period was $277,269, then the sum to be deducted from said total gross receipts in respect of its passenger travel outside of the city limits is to be ascertained as follows, that is to say: as 1,954,156 : 126,781 :: $277,269 : $17,985; which said sum of $17,985 is to be deducted from said sum of $277,269, and upon the remainder, to wit, the sum of $259,284, the plaintiff is to recover nine per cent., less such amount as the defendant has already paid to the plaintiff on account thereof for the period from February 1, 1885, to March 15, 1887, as shown by the witness Fender."

It appears clear that the Court thought, that as there was no evidence enabling it or the jury to find how far each passenger who rode on the cars travelled, the only way to approximate a fair basis of settlement was to act on the assumption that each part of each line carries as many as any other part. This seems reasonable, and is the principle the Legislature has sanctioned as the mode of ascertaining the taxable gross receipts of steam rail roads whose tracks are partly within, partly without the State of Maryland. Section 153, of Art. 81, found in vol. 2, Code of Public General Laws, page 1264, makes this provision: "Whenever the road of any railroad company, organized under the laws of this State, shall extend beyond the limits of this State into any other State or States, and the return of the financial officer of said company, made to the Comptroller, shall not show certainly and accurately the precise amount of gross receipts

within this State, the Comptroller may ascertain said amount by making the gross receipts in this State bear the same proportion to the whole gross receipts of said company, as the number of miles of said road in this State does to the whole number of miles in length of said road."

In *State vs. Phil., Wilm. & Balto. R. R. Co.*, 45 *Md.*, 384, this Court said that "this rule is fair and reasonable." The Court said, "it was true that the receipts on one part of the road might be greater than on another, but *perfect equality* in the assessment and apportionment of taxes is unattainable," and hence they adopted this rule as right. This Court cites *The Delaware Railroad Tax Case*, 18 *Wall.*, 208–231, where this rule was approved by the Supreme Court of the U. S. It was also approved in *State Railroad Tax Cases*, 92 *U. S.*, 608–611, and *Western Union Telegraph Co. vs. Massachusetts*, 125 *U. S.*, 530–552.

There is one difference in the principle adopted in this case and that prescribed in the statute quoted, and approved in the cases decided, which ought to be noted, and which has already been alluded to. It is that this instruction adopts the basis of the full mileage traversed by the cars of the appellant instead of the simple track mileage. The reason for this, and the justice of it, grows out of the fact that there is a portion of the track common to some of the lines, and as the cars pass over the tracks they are to be presumed to be earning fares by the carriage of passengers; therefore the actual round trips made by each car represent its full earnings, and the exact distance also it has traversed, and therefore gives a more accurate method of reaching the earnings of that part of the road which is not subject to tax. Approving, as we do, the granting of the plaintiff's second prayer, it follows, as a consequence, that the defendant's first prayer was properly rejected. If any injustice is done the appel-

lant, it results from its neglect to furnish a more accurate method of fixing the half mile track earnings. The plaintiff's first prayer, and the second, third and fourth prayers of the defendant, involve the construction of the ninth section of ordinance No. 150, which imposes the tax, and the admissibility of certain evidence of the appellant which by the first prayer of the appellee is asked to be stricken out, and which was, by the Court below stricken out.

Section 9 of the ordinance No. 150 of 1880 (which granted appellant its privileges and imposed the tax sued for,) provides "that whenever the amount of the gross receipts of any passenger railway company, owning or operating any railway tracks in the City of Baltimore, now required to be paid to the city register for the use of the park fund, shall be reduced from 12 *per centum* to any less amount, the said reduction shall apply to the railways hereby authorized to be constructed."

The appellant offered evidence touching certain settlements of the city with some other railways with which the city was in controversy, in which the city submitted to certain deductions for the purpose of securing a settlement. The appellant claimed the benefit of like deductions, on the contention that it was a reduction of the *per centum* of tax under the ninth section of the ordinance above quoted.

It is unnecessary to elongate this opinion by the recital of what was done by the city in compromise of litigation with other companies, for it is very clear to us, that such acts on the part of the city were not what the ninth section of ordinance No. 150 was providing for, and guaranteeing to this appellant. The acceptance by the city of less than was due, for the purpose of ending suits and controversies on amounts claimed as due, by way of compromise, was certainly not a reduction of the per centum of tax; and was not what was

Balto. Union Pass. Railway Co. *vs.* Mayor, &c., of Baltimore.

intended by that clause of the ordinance. It only meant, that if thereafter any other company should be granted privileges such as were accorded the plaintiff, and a less per centum of tax on the gross receipts of such company should be required of them, than was required of appellant, or if the rate of per centum should be diminished from the tax on companies chartered before the appellant, then such diminution of rate should also enure to the benefit of the appellant. The city authori- ties might possibly have exceeded their authority, and made illegal settlements, but it is not necessary for us to consider whether they did or not; the appellant is very clearly not entitled to abatement because of those arrangements by way of compromise. Without relying on this view wholly, the appellee contends that since the passage of the Act of 1882, chapter 229, fixing the park tax at nine per centum, ordinance No. 150 of 1880 has become a nullity, because the city has no power to modify, reduce or repeal the park tax. There is much force in this argument; but we are so clear in the view we have already expressed, this contention of the appel- lee need not be considered. A proper construction of the ordinance excludes the view urged upon us by the appellant's counsel.

Finding no error, the judgment must be affirmed

*Judgment affirmed.*

(Decided 17th December, 1889.)