## STATE TAX COMMISSION *v.* WESTERN MARYLAND RY. CO.
## MARYLAND & PENNSYLVANIA R. CO. *v.* STATE TAX COMMISSION

[Nos. 74, 108, October Term, 1946.]

242

*Decided April 16, 1947.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, and MARKELL, JJ.

*Hall Hammond, Attorney General,* and *Richard W. Emory, Deputy Attorney General,* with whom was *Joseph D. Buscher, Assistant Attorney General,* and *J. Edgar Harvey, Assistant Attorney General,* on the brief, for the appellants, State Tax Commission and others.

*Francis J. Carey* for the Maryland & Pennsylvania Railroad Company, appellant.

*Hilary W. Gans* and *William C. Purnell*, with whom was *Eugene S. Williams* on the brief, for the appellee, Western Maryland Railway Co.

*Richard W. Emory*, Deputy Attorney General, with whom was *Hall Hammond, Attorney General*, on the brief, for the appellee, State Tax Commission.

MARBURY, C. J., delivered the opinion of the Court.

The decision in these two cases requires an interpretation of the gross receipts tax on steam railroads, imposed by Article 81, sections 94½ to 99 of the Code. It differs in this respect from the tax construed in No. 70 of this Term (*Rogan, State Tax Commission v. Baltimore & Ohio Railroad Co.*, 188 Md. 44, 52 A. 2d 261) which was imposed by a special statute affecting only the railroad in that appeal, Act of 1878, Ch. 155. That statute, however, was a compromise agreement for the application to the Baltimore and Ohio of the first Maryland gross receipts laws, Act of 1872, Ch. 234, and Act of 1874, Ch. 408. These laws were the basis of the general law now in force and the intention evidenced in them, and reflected in the Act of 1878, has some bearing upon the cases now before us. The Act of 1878 was passed after the Baltimore and Ohio Railroad had been sued for gross receipts taxes under the Act of 1872 (*State v. Baltimore & Ohio R. Co.*, 48 Md. 49), and while an appeal by the railroad from an adverse decision in that case was pending in the Supreme Court of the United States. In No. 70 we construed the Act of 1878 as a tax to be measured by the gross receipts of the Baltimore and Ohio within the State, the determination of which was not confined to the length of line or line mile method as contended by the railroad. We held it could be determined by what was contended to be a more accurate method namely, the so-called all track method,

used by the State Tax Commission in that case. The main question in the two cases now under discussion is whether, under the general law, gross receipts earned within the State by steam railroads other than the Baltimore and Ohio, must be determined according to the length of line method, or whether other methods can be used.

The difficulty arises when a railroad (such as the two in the cases before us) has receipts from business done wholly within the State, receipts from business done wholly outside the State and receipts from business done partly in the State and partly outside. The amount of the receipts from the first two classes of business is easily ascertainable. The third class presents the problem. Practically all the inter-state railroads passing through the State claim that they cannot segregate the receipts earned in the State from inter-state business, and therefore some method of approximation must be adopted. The length of line or line mile basis divides the whole length of the railroad by the length of its line in the State, and uses the result as a denominator of the entire gross earnings. The figures used are the lengths of main lines (single track) on the entire system and in the State. By the all track method, all the lines, main track, double or second track, switches, spurs, etc., are included. The difference is illustrated in the case of the Western Maryland Railway Company. Its length of line is 850 miles of which 32% is in Maryland. Its entire track, however, is 1390 miles of which 39% is in Maryland. Under the length of line method, therefore, it would pay a tax measured by 32% of its gross receipts. Under the all track method it would pay on 39%.

The State Tax Commission assessed the Western Maryland for the years 1942, 1943 and 1944 according to the all track method. The railway paid the taxes and appealed to the Circuit Court of Baltimore City. That Court on April 18, 1946, set aside the assessments and remanded the proceedings to the Commission with directions to recompute the taxes upon the main line or length of line

basis. From that order the appeal is brought here in the name of the State Tax Commission by the attorney-general and the deputy attorney-general of the State. This is case No. 74.

A motion has been made to dismiss the appeal because it is claimed that Section 194(b) of Article 81 only gives the parties named in that section the right of appeal. And while one of these parties is "the Attorney-General on behalf of the State" the appeal was taken on behalf of the State Tax Commission, which is not a party named. It appears, however, that Section 175 (13) of Article 81 authorizes the State Tax Commission to participate in any proceeding in court wherein any assessment or taxation question is involved. The Commission participated in this proceeding below and had the right of appeal granted by Section 30 of Article 5 of the Code to any party to a suit. This right has been frequently recognized by this Court, either impliedly or expressly. *State Tax Commission v. Baltimore National Bank*, 169 Md. 65, 180 A. 260; *Board of Zoning Appeals v. McKinney*, 174 Md. 551, at page 561, 199 A. 540, 117 A. L. R. 207. The motion to dismiss will be denied.

After the decision in the Western Maryland case, the Maryland and Pennsylvania Railroad Company filed its bill of complaint in the Circuit Court of Baltimore City alleging that for the year 1943 and thereafter the State Tax Commission had assessed its gross receipts within the State by a composite method which the railroad believed produced substantially accurate results. This method was to assign the intra-state revenues to Maryland, to disregard the wholly out of State revenues and to prorate the inter-state revenues on all track basis. The railroad alleged that under the Western Maryland decision, the State Tax Commission would have to use the length of line method as to the Maryland and Pennsylvania, and it claimed that a tax produced by this method, as applied to it, would be unconstitutional and void. It denied the correctness of the Court's decision as applied to all railroads. It asked a declaratory decree and an

injunction. The Circuit Court dismissed its bill after a hearing, and the railroad appealed here. This is case 108.

The contention of the Western Maryland (upheld by the decision of the lower court) is that the tax is upon the gross receipts calculated according to the length of line method. It bases this contention upon its conception of the proper interpretation of the statute, and upon what it claims is long-continued judicial and administrative construction. In the consideration of this contention and the contrary contention of the State Tax Commission that any reasonable method may be used to find what are the gross receipts, we are not unmindful of the multitude of decisions in the State courts throughout the country and in the Supreme Court of the United States which discuss gross receipts taxes. These are concerned primarily with the right to tax gross receipts, when they can be taxed, and how the tax may be levied. In general it may be said that the gross receipts of a railroad earned within a State may be taxed as such if no other taxes are levied against it; that gross receipts earned both within and without a State may be used as a basis for the calculation of a franchise tax; that gross receipts earned outside of a State may not be taxed as such; that no apportionment of inter-state receipts which unduly burdens inter-state commerce may be used, whether the tax is called a franchise tax or not, and that an honest State effort to make an apportionment will be upheld unless it produces a "palpably disproportionate result." 28 *Mich. Law. Rev.* 328; *Galveston, etc., Ry. Co. v. State of Texas,* 210 U. S. 217, 28 S. Ct. 638, 52 L. Ed. 1031; *Wallace v. Hines,* 253 U. S. 66, 40 S. Ct. 435, 64 L. Ed. 782; 53 *Harvard Law Rev.* 909; *Illinois Cent. R. Co. v. State of Minnesota,* 309 U. S. 157, 60 S. Ct. 419, 84 L. Ed. 670; *International Harvester Co. v. Evatt,* 329 U. S. 46, 67 S. Ct. 444, 91 L. Ed. 390; *Joseph v. Carter & Weekes Stevedoring Co.,* 330 U. S. 442, 67 S. Ct. 815, 91 L. Ed. 993.

The question before us is whether the Maryland Legislature made the tax base, not the gross receipts earned

within the State, but such gross receipts, estimated by a specific method. To find the answer, we turn to the statutes and the history of the tax with the applicable decisions.

Prior to 1872 railroads were taxed on their property, Art. 81, Code 1860, Acts of 1870, ch. 362. The Act of 1872, ch. 234, was entitled "An Act to tax the gross receipts of railroad companies in this State for State purposes." The act levied a tax of one-half of one per centum per annum annually upon the gross receipts of all railroad companies, worked by steam, incorporated and doing business in the State. It required the financial officers of such railroads to report under oath to the Comptroller the total gross receipts of the road and to pay the tax levied. No apportionment was required. A similar act for Pennsylvania was upheld by the Supreme Court of the United States *In Re State Tax on Railroad Gross Receipts,* 1873, 15 Wall 284, 21 L. Ed. 164. The act of 1872 also provided that all railroads paying the gross receipts tax should be exempt from other State taxation. The tax therefore was not a tax upon the property of the corporations affected but was a franchise tax. *Cumberland & P. R. Co. v. State,* 92 Md. 668, 48 A. 503, 52 L. R. A. 764; *Postal Telegraph Cable Co. v. Harford County Com'rs,* 131 Md. 96, 101 A. 600.

The interrogatories sent out by the Comptroller under this act called not only for receipts from all sources, but also for the receipts from passengers and freight between points in the State. In the case of the Baltimore and Ohio we find that they also asked for the length of the main stem from Baltimore to Wheeling and the number of miles of the main stem located in Maryland. The Baltimore and Ohio replied that it kept no separate account of receipts between points in the State. It was then assessed on the basis of the proportion of its main line in the State to its entire main line. Similar action was taken in the case of the Philadelphia, Wilmington and Baltimore Railroad. Suits were brought and recoveries had against both railroads. *State v. Philadelphia W. &*

B. R. Co., 45 Md. 361, 24 Am. Rep. 511 and *State v. Baltimore & O. R. Co.*, 48 Md. 49. The main line method used and approved was different from the length of line method contended for by the Western Maryland. Branch lines, at least one of which appear to have been taxable (the Port Deposit branch of the P. W. & B.) were omitted. The Washington branch of the B. & O., also omitted, was paying a franchise tax based on one-fifth of the passenger receipts. *State v. Baltimore & O. R. Co.*, 34 Md. 344, affirmed 21 Wall. 456, 22 L. Ed. 678.

When the two cases against the P. W. & B. and the B. & O. were argued, the act of 1874, ch. 408, had been passed, although this was not in effect when the taxes sued on were calculated. The act of 1874 repealed and re-enacted the act of 1872, codifying it as part of Article 81 of the Code and adding a new section which read as follows: "Whenever the road of any railroad company, organized under the Laws of this State, shall extend beyond the limits of this State into any other State or States, and the return of the President, Treasurer, or other financial officer of said company, made to the Comptroller, shall not show certainly and accurately, the precise amount of gross receipts within this State, the Comptroller may ascertain said amount, by making the gross receipts in this state, bear the same proportion to the whole gross receipts of said company, as the number of miles of said road in this state, does to the whole number of miles in length of said road."

Both acts were discussed in the two cases. Counsel for the railroad in the Philadelphia W. & B. case (Thomas Donaldson and I. Nevitt Steele) contended that the method adopted and permitted by the Act of 1874 was arbitrary and could not be used. 45 Md. at page 372, 24 Am. Rep. 511. The Court said the rule seemed to be fair and reasonable and that "perfect equality in the assessment and opportionment of taxes is unattainable." It held that "upon the pleadings and admitted facts in this case" the State could recover the tax levied.

In the Baltimore & O. case, counsel for the railroad (John K. Cowen and I. Nevitt Steele) said that the method authorized by the Act of 1874 "was added to enable the Comptroller * * * to approximate to the gross receipts within the State when he was not furnished with a statement of them by the company's officers." 48 Md. at page 59. The Court said that as no separate account had been kept, "Under such circumstances the only rule by which we can approximate to such receipts, is to say that they shall bear the same proportion to the entire gross receipts derived from the Main stem in the State, as the number of miles of the Metropolitan Road bears to the entire length of the appellee's road." 48 Md. at page 79.

Another suit was brought under the Act of 1872 against the Northern Central Railway Co. *State v. Northern Central Ry. Co.*, 44 Md. 131. In that case an assessment on the main line basis was upheld. The Northern Central, at that time, had no branches so the assessment was on the only method that could be used as to it.

A decision was rendered by this Court in 1889 which bears somewhat on the construction of the Act of 1874 although it did not arise under that act. The Union Passenger Railway Company of Baltimore City had a franchise subject to the condition of paying to the City Register for the use of the park fund 12% of the gross receipts accruing from passenger travel within the city limits. The railway company had one line which was 2.69 miles in length, one-half mile being outside of the city limits. The company kept no separate operation accounts of the receipts within and without the city and there was no division of fares at the city line. This Court said it was clear that some method must be adopted to determine what portion of the revenue should be deducted as not liable to tax. In discussing this question it quoted the prior approval of the length of line method as "fair and reasonable" in *State v. Philadelphia W. & B. Railroad Co.*, 45 Md. 361, 24 Am. Rep. 511, *supra*. In the case before it, however, it approved a division on the

basis of the full mileage travelled by the cars of the railway company, stating that this rule seemed to reach the justice of the case and to be free from objection. The gross receipts, therefore, in that case were calculated on car mileage rather than length of line mileage. *Baltimore Union Passenger Ry Co. v. Mayor, etc., of City of Baltimore,* 71 Md. 405, 18 A. 917.

It seems clear from reading these cases that the Court in each case was approving methods used to find out what were the gross receipts. The emphasis was on the thing to be ascertained, and the method was approved in each case, because in that case it was found to be a fair and reasonable one to reach the result desired. That is to ascertain as correctly as possible what were the gross receipts to be taxed. There is no statement in any of the cases that the method used in that case is the *only* method to be used.

The next statutory change came when the Act of 1890, Ch. 559, was passed. As several questions arise as to the form of this enactment then, and its present codification, Sections 1 and 2 as then passed are set out here in full:

"Section 1. Be it enacted by the General Assembly of Maryland, That a State tax of one per centum be and is hereby levied annually upon the gross receipts of all railroad companies worked by steam incorporated by or under the authority of this State and doing business therein; a State tax of one per centum is hereby levied annually upon the gross receipts of every telegraph or cable express or transportation company incorporated under any general or special law of this State and doing business therein; a State tax of two per centum is hereby levied annually upon the gross receipts of all telephone, parlor car, sleeping car, safe deposit, trust, guaranty and fidelity companies incorporated under any general or special law of this State and doing business therein; a State tax of one per centum is hereby levied annually upon the gross receipts of all oil or pipe line companies and all title insurance companies incorporated under any general or special law of this State and doing business

therein, and one-half of one per centum upon the annual gross receipts of all electric light or electric construction companies incorporated under any general or special law of this State and doing business therein; if any such railroad company has part of its road in this State and a part thereof in another State or States, such company shall return a statement of its gross receipts over its whole line of road together with a statement of the whole length of its line in this State, and such company shall pay to the State at the said rates hereinbefore prescribed upon such proportion of its gross earnings as the length of its line in this State bears to the whole length of its line, and similar statements shall be made by each oil or pipe line company and each sleeping car, parlor car, express, transportation or cable company, so that the proportion of said gross earnings of said companies respectively accruing from their business within this State may be accurately ascertained, or said ascertainment may be made in any other mode satisfactory to the State tax commissioner; the said gross receipt taxes shall be due and payable at the treasury on or before the first day of July in each year.

"Sec. 2. And be it enacted, That it shall be the duty of each and every such corporation or company so doing business in this State on or before the fifteenth day of April next, and on or before the fifteenth day of April in each and every year thereafter to make a report under oath of its president, treasurer or other proper officer, to the State tax commissioner showing its total receipts or revenues accruing from business done in this State for the year ending on the preceding thirty-first day of January, and it shall be the duty of the State tax commissioner to file such report in his office, and on or before the first day of June next, and on or before the first day of June in each and every year thereafter, to calculate the State tax due from such corporation or company on its gross receipts or revenues aforesaid for such year, and to transmit the amount of such State tax to the comptroller of the treasury, to be collected and received

into the State treasury as other State taxes are received into the treasury of this State."

Several things may be noted about this Act. By it, for the first time, the gross receipts of companies other than railroads are taxed by the State. After the provisions for the statements by railroads of their gross receipts and their mileage within the State, and the requirement that the railroad shall pay on a proportionate basis and the further provision for similar statements by other companies so that the proportion of their gross earnings in the State may be ascertained it is provided, also for the first time, that "said ascertainment" may be made in any other mode satisfactory to the State tax commissioner. The word "ascertainment" was changed to "statement" in the amending Act of 1896, Ch. 120, and the words "and required by" were inserted in the provision that the statement must be made in a mode satisfactory to the Commissioner, so that he could require the manner in which it was to be made. The provision for similar statements by other companies is separated from the apportionment formula only by a comma, and not by a semicolon as in the later amendment made by the Act of 1906, ch. 712. This change in punctuation was first made in the 1900 Supplement of the Code of 1888 (only evidence of the law) carried over into the 1904 Code (also only evidence of the law) and first enacted as law in 1906. The origin of the form of the present codification of the law will be discussed later in this opinion.

A case which did not reach this Court, but which has some bearing on the judicial and administrative construction of the tax was brought in 1911. This was an appeal by the Norfolk & Western Railway Company from an assessment made by the State Tax Commissioner on a length of line basis taking into consideration its whole line and all gross receipts. The tax was $6,142.13. On the basis of actual gross receipts from the part of the Shenandoah Division in Maryland the tax would have been $4,288.38. On a line mile apportionment of the

Shenandoah Division only the tax would have been $3,-765.34. The Circuit Court No. 2 of Baltimore City decided in favor of the last method, producing the lowest figure named. *Norfolk & Western Ry. Co. v. Vandiver,* 3 Balto. City Reports, 140. The State Tax Commissioner asked for an opinion from Attorney General Edgar Allan Poe, and the latter gave it on July 17, 1912. In this opinion he construed the statute as follows: "The Gross receipts tax is a franchise tax and is supposed to be based upon the revenues derived actually and solely from business within the State if these can be accurately ascertained, and the rule of apportionment of the gross revenues derived from business both within and without the State based upon the proportion of the mileage within and without the State, is only to be resorted to and can properly only be resorted to in the event of an inability to arrive at the actual gross revenues derived from business entirely within the State. This is apparent from the history of the legislation, especially Chapter 408 of the Acts of 1874, Section 157; the decision of our Court of Appeals in *State v. United States Fidelity & Guaranty Co.,* 93 Md. [314], 315, [48 A. 918]; *State v. Central Trust Co.,* 106 Md. [268], 270 [67 A. 267], * * *." And later in his opinion he said, "In my opinion, in view of all the authorities, the rule of apportionment based upon the extent of mileage within and without the State is a rule that can only be resorted to in the absence of figures showing the exact receipts derived from business within the State and even in such a case is only to be taken as *prima facie* correct." Finally he concluded, "As I have already indicated the amount due by the Railway Co. to the State is, in my opinion, neither the $6142.13 claimed by the State nor the $3765.34, the amount tendered by the Railway Co., but is an amount somewhere between these two figures based upon the actual gross receipts derived from business within the State."

A tax revision commission was authorized by the Act of 1927, Ch. 687, and reported a recodification and revision of all the tax laws. This was embodied in Chap-

ter 226 of the Acts of 1929 which repealed and re-enacted in its entirety Article 81 of the Code. The Article starts off with rules of construction. The first of these rules states that the provision of the Article "so far as they are substantially the same as existing statutes, shall be construed as continuations thereof, and as intended to make no substantive change in existing laws." "No implication of a change of intent shall arise by reason * * * of a relocation or rearrangement of sentences, phrases, sections or paragraphs." Both of these statements are qualified by the further statement "except so far as such change of intent shall be clearly manifest." The gross receipts tax was codified as Sections 91 to 97, both inclusive, of Article 81, and Section 1 of Chapter 559 of the Acts of 1890, is divided into a number of parts. (a) states "A State tax as a franchise tax is hereby levied annually for the year 1930 and subsequent years measured by the gross receipts for the preceding calendar year, of: (1) All domestic or foreign railroad companies, whose roads are worked by steam, doing business in this State, at the following rates." (2), (3), (4), and (5) fix different rates on other kinds of companies. (b) is practically identical with the last part of Section 1 of the Act of 1890 as amended by the Acts of 1896 and 1906 included in the 1904 Code. It read as follows: "(b) If any such railroad company has part of its road in this State and part thereof in another State or States, such company shall return a statement of its gross receipts over its whole line of road, together with a statement of the whole length of its line and the length of its line in this State, and such company shall pay to the State, at the said rates hereinbefore prescribed upon such proportion of its gross earnings as the length of its line in this State bears to the whole length of its line; and similar statements shall be made by each oil pipe line company, and each sleeping car, parlor car, express or transportation company, telephone or telegraph or cable company, so that the proportion of the said gross earnings of the said companies, respectively, accruing, coming from their

business within this State, may be accurately ascertained, or said statement may be made in any other mode satisfactory to and required by the State Tax Commission. The said gross receipts taxes shall be due and payable at the treasury on or before the first day of July in each year." All of these provisions are in Section 91. Section 92 is practically identical with Section 2 of the Act of 1890, substituting, however, the State Tax Commission for the State Tax Commissioner. Section 93 gives the State Tax Commission the duty of ascertaining in any manner they may judge to be most available and certain the amount of the gross receipts of a taxpayer who neglects or refuses to make a report. The other sections are unimportant for the purposes of this opinion. This Act with some amendments of rates made by Chapter 906 of the Acts of 1941, and with definitions of gross receipts as operating revenues, made by the Act of 1943, Chapter 488, is now codified as Sections 94½ to 100, both inclusive, of the Code, Article 81.

The division of Section 1 of the Act of 1890 into subsections by the Act of 1929, and the codification of the latter add nothing to the proper interpretation of the tax. It is clearly stated, as we have shown, that neither relocation or rearrangement is in tended to make any substantive change in existing laws. We have, therefore, in effect the Act of 1890 which in turn is an extension to other companies of the tax previously laid on railroads by the Acts of 1872 and 1874. All of these Acts form a continuous chain of taxation, and it should not be presumed that the tax has been changed unless it clearly appears from the context.

The Maryland Tax Revision Commission of 1939, appointed under Chapter 262 of that year, reported that the length of line method "under present day conditions, is universally regarded as too crude for use except in the simplest situations." And "all track mileage would produce more accurate results with no increase in the burden of computation." See Report, p. 88. This is in agreement with the statement in a report of the Committee

on the Taxation of Public Utilities of the National Tax
Association in 1923 which said, "Single track mileage
is not a satisfactory index of property distribution be-
cause it ignores terminals, nor is it a fair index of busi-
ness done, because it ignores density of traffic. All track
mileage, which makes allowance for double tracking, sid-
ings, etc., serves to overcome both of these shortcomings
to a considerable degree. Where there are terminals,
there are more tracks; where business is heavy, there are
additional lines." See Proceedings, p. 407. See also
Bonbright's "Valuation of Property" (1937), Volume II,
Chapters XIX and XX. Following these authorities the
State Tax Commission abandoned the length of line
method of assessment so far as the Western Maryland
Railway was concerned, and assessed it for the years in
question according to the all track method. That action
led to the two cases before us. Judge Niles, sitting in
the court below, in a lengthy and careful opinion, con-
cluded that gross receipts of railroads were to be treated
in a different manner from gross receipts of other utili-
ties, that as to railroads there is a statutory direction
that the tax be apportioned on the length of line basis.
He based this on the division of the statute, including the
semicolon to which, however, he said he did not wish to
give too much weight, and on legislative acquiescence
and on administrative construction. We are unable to
agree with his conclusions.

In our opinion the intention of the Legislature has been
manifest from the beginning. That intention has been
to tax the gross receipts of railroads. The length of
line method was adopted seventy years ago because it
was the only method thought of to apportion receipts.
There is nothing in the decisions of this Court which re-
quires it to be used. No point was made in any of the
cases, until the cases we have heard in this Term, that
it was the only method which could be used. It was
adopted by this Court in the early cases because it seemed
at the time a practical method, and not because it was
required by the law. The Act of 1874 authorized the

method when "the precise amount of gross receipts within this State" was not shown in the railroads reports. Our predecessors went no farther than to approve this statutory method. The Act of 1890 specifically permitted the ascertainment of the gross earnings to be made in any other mode satisfactory to the State Tax Commissioner and we cannot assume from the position of this clause in Section 1 of the Act that it was intended only to apply to the other companies then, for the first time, made subject to the tax. The clause following is the only place in the Act which fixed the time payment of the taxes. That clause undoubtedly applied to all the companies. The whole section was one sentence and we do not believe the Legislature intended to apply certain general clauses to some companies and not to others. The argument based on the semicolon becomes absurd, when it is shown that this was changed from a comma in codification and the codification was followed in the later Act. That is a pure clerical error, and is not entitled to any weight whatever. Our conclusion is that the Legislature intended to tax gross receipts, and permitted the use of length of line apportionment method because it was reasonable. The courts approved it for the same reason, but it was not intended thereby to tie the hands of the tax authorities in case such method became unreasonable by reason of the growth of railroads and the extension of double trackage, siding, switches, etc.

Nor do we think the administrative practice is so universal as to make it a proper guide for us to follow in interpreting the statute. We have already shown that in the case of the *Philadelphia, Wilmington, and Baltimore,* 45 Md. 361, 24 Am. Rep. 511, a part of the line which was not the main line was omitted so that in that case we have a main line method rather than length of line method. In the City Passenger Railway case it was held another gross receipts tax could be calculated on a car mile basis. In his opinion relating to the Norfolk and Western case, brought after the Act of 1890, Attorney General Poe expressly negatived the theory that the

length of line rule must be adopted in every case, and said it could properly be resorted to only in the event of an inability to arrive at the gross receipts otherwise. The Pennsylvania Railroad leases its tracks in Maryland from several other corporations. Its gross receipts have been taxed on the length of line method as applied to each separate corporation, which is a distinct departure from the method approved in the statute. The receipts of the Maryland and Pennsylvania have not been apportioned on the strict length of line basis since 1927. The little East Washington Railway which runs out of the District of Columbia, partly into Maryland, was taxed by assigning to the District the switching revenues there earned and to Maryland the revenues earned in Maryland and by pro-rating the balance on a line mileage basis. This has now been changed to an all track basis. These railroads, which are not assessed in strict accordance with the length of line principle, are, with the exception of the Pennsylvania, productive of only a small amount of taxes. Nevertheless, if we find, as we must, that gross receipts taxes have been collected by other methods than the length of line method then the continuity and universality of an administrative practice to use that method is shown not to exist.

Administrative interpretation, if consistent and unvaried, has weight in the construction of statutes. *Wells v. Price,* 183 Md. 443, 37 A. 2d 888; *Travers v. Fogarty,* 187 Md. 348, 50 A. 2d 238. But even such a practice in this case would not justify us in restricting what we find to have been the intent of the Legislature. *Bouse v. Hutzler,* 180 Md. 682, 26 A. 2d 757, 141 A. L. R. 843; *State Tax Commission v. Baltimore & Ohio Railroad Co., supra.* Here not only is the practice not entirely uniform, but it is in no way inconsistent with our view of the law. A compliance with a statutory method cannot be twisted into a denial of any other method. And in no instance (except the Norfolk and Western case) have the taxing authorities taken the position that the length of line method is the only one permissible. In the Norfolk

and Western case they were promptly advised by the attorney general of the error of that conclusion. The members of the Legislature could not, perhaps, anticipate the enormous changes in our economy during the past generation. But we are not at liberty to deny them enough foresight to provide a tax unfettered by an inflexible mode of collection. We must allow them prescience enough to suppose new and different conditions would necessarily arise. And the practice carries no contrary implication.

The contention of the Western Maryland in No. 74 is based solely upon its interpretation of the statute, which it claims requires the length of line or main line method to be used. That contention we have denied. It does not necessarily follow, however, that we approve the use of the all track method in every case. It was not contended in the Western Maryland case that the all track method, as applied to it, did not produce reasonably accurate results. No contention was made and no evidence was produced on this ground. The whole contention was that the assessment could legally be made only on the length of line or main line method. The assessments from which the appeals were taken will be, therefore, sustained. We wish to be understood, however, as not holding that this particular method or any other special method is applicable to any particular railroad, unless, in the case of that railroad, it is the most nearly correct method of ascertaining what are its gross receipts earned within the State of Maryland.

In the case of the Maryland and Pennsylvania the bill was dismissed on the ground that the State Tax Commission had to use the length of line method. It had not used that method, but if the decision of the lower court were correct, it would have had to change its assessment. Since we have reversed that decision, there is no occasion for an injunction to issue, nor is the constitutional question raised by the railroad before us. The State Tax Commission may be able to file an amended answer, setting up its position in the light of our decision

in these cases, which will make it unnecessary to take any further proceedings in the case. We therefore will remand the proceedings in No. 108 for that purpose.

*Motion to dismiss appeal in No. 74 denied. Order in No. 74 reversed with costs to appellant and assessments sustained.*

*Order in No. 180 reversed with costs to appellant and case remanded for further proceedings in accordance with this opinion.*

MARKELL, J., filed the following dissenting opinion:

1. The B. & O. case involved construction of the statutory tax contract of 1878, the instant case the tax statute of 1874; the one an irrepealable contract, the other a statute which could be repealed or amended by the Legislature at any time. But the question of construction is similar in the two cases. Much that was said in the B. & O. case is applicable in the instant case. In effect, both the Act of 1878 and the Act of 1874 are now construed to "produce the most beneficial results," *i. e.,* the most taxes.

2. In the B. & O. case this court stressed the absence in the Act of 1878 of the express provision for mileage apportionment in the Act of 1874. In the instant case this provision is held to have been amended by the Act of 1890. Without repeating at length what has been well said by. Judge Niles, I agree with him that the amendment of 1890 is not applicable to railroads. This construction was adopted by the State Tax Commissioner in his form for annual reports at least as early as 1899. The semicolon *per se* is not controlling or perhaps significant. It does, however, illustrate the fact that Mr. John P. Poe in 1900 and 1904 and the commission that revised the tax laws in 1929, by separating provisions of the Act of 1874 applicable to railroads from provisions of the Act of 1890 applicable to other corpora-

tions, emphasized the construction already adopted by the State Tax Commissioner, which Judge Niles aptly says is the clear meaning of the statute without the semicolon. The 1939 Tax Revision Commission, as Judge Niles points out, recommended that the law be repealed and "the revenue raised by a tax which can be applied equally." After failure to obtain legislative amendment of the "method of allocating" (Acts of 1945, p. 1985, Senate Bill 413, veto memorandum) judicial amendment is effected in the instant case.

3. "Gross receipts within this state" (1) (*a*) include receipts from wholly intrastate business and (*b*) exclude receipts from wholly extra-state business and (2) include apportionment of receipts from interstate business. Items 1 (*a*) and (*b*) are facts, which by sufficient bookkeeping could be ascertained exactly; item (2) is not a fact but an abstraction, which can only be computed by some more or less arbitrary formula that sufficiently approximates reality to avoid substantially burdening interstate commerce or taxing property outside the State. Whether under the Act of 1874 the tax officials could require separate determination of item (1) (*a*) is a question not presented in the instant case. If this were done, the mileage apportionment would still be necessary and applicable to item (2).

4. For many years the Supreme Court held that a state cannot tax gross receipts from interstate commerce as such (*Philadelphia & Southern Steamship Co. v. Commonwealth of Pennsylvania,* 122 U. S. 326, 7 S. Ct. 1118, 30 L. Ed. 1200) but may tax gross receipts, apportioned on a mileage basis, in lieu of property taxes, if the tax amounts to no more than a just equivalent for ordinary property taxes, and the apportionment does not in fact amount to a tax on interstate commerce or on property outside the state. *Galveston, Harrisburg, etc., R. Co. v. State of Texas,* 210 U. S. 217, 224-227, 28 S. Ct. 638, 52 L. Ed. 1031. In *Wallace v. Hines,* 253 U. S. 66, 40 S. Ct. 435, 64 L. Ed. 782, a North Dakota property tax, apportioned on a mileage basis, was held unconstitutional,

not because such apportionment is not ordinarily fair, but because the grossly disproportionate value of farm land in North Dakota and terminals in distant States made the apportionment palpably unfair and had the effect of taxing property in other States.

If and when the Maryland gross receipts tax, apportioned on the mileage basis, actually became grossly disproportionate to the Maryland business and the value of Maryland property of a particular railroad, then either the tax statute in its entirety became unconstitutional, or else it was to be construed as impliedly subject to exceptions to the extent of avoiding conflict with the Constitution. Construing a statute and the Constitution together, so as to avoid conflict, is a familiar method of construction. This method seems to have been followed by the State Tax Commissioner and the State Tax Commission in exceptional cases. In the case of the Maryland and Pennsylvania Railroad, the essential feature of the apportionments was that the taxpayer was permitted to ascertain item (1) (a) exactly—hardly a departure from the statute itself. In the Norfolk & Western and the Pennsylvania Railroad cases the question was what was the line to be apportioned, e. g., the Shenandoah Valley Railroad from Hagerstown to Roanoke, taken over by the Norfolk & Western, or the total line of the Norfolk & Western, geographically and economically remote from the Shenandoah Valley line. This case was compromised. I see nothing in these exceptional cases, evidently disposed of on constitutional grounds, which impairs the correctness of Judge Niles' conclusion that his construction of the statute is supported by unbroken administrative practice for almost seventy years—more than fifty years since the amendment of 1890.

5. On the question whether, on the facts and under the Constitution, the Maryland and Pennsylvania Railroad is entitled to exceptional treatment, I express no opinion.