The People of the State of New York ex rel. The American Soda Fountain Company, Respondent, *v.* James A. Roberts, as Comptroller of the State of New York, Appellant.

1. Corporation Tax — Exemption Based on Manufacturing. Under the amendment of 1890 (Ch. 522) to the Corporation Tax Act of 1880 (Ch. 542), the exemption based upon manufacturing is limited to corporations whose business within the state is exclusively that of manufacture; and a corporation engaged in other business here besides that of manufacture is not within the exemption.

2. Interstate Commerce and Manufacturing. The fact that the other business besides manufacturing carried on by a corporation within the state was interstate commerce, does not bring the corporation within the exemption, confined to manufacturing solely, prescribed by the Corporation Tax Act as amended in 1890.

3. Interstate Commerce and Manufacturing. The fact that a foreign corporation's business in this state other than manufacturing was

1899.] People ex rel. A. S. Fountain Co. v. Roberts. 169

N. Y. Rep.]                    Statement of case.

interstate commerce, does not prevent the state from subjecting its business to taxation when there is no hostile discrimination against the corporation in the assessment thereof.

4. FRANCHISE TAX NOT VIOLATIVE OF FEDERAL CONSTITUTION. Under the Corporation Tax Act of 1880, as amended, by which domestic and foreign corpor.t:ons are taxed alike upon their franchise or business transacted within the state, if they are engaged in state as well as interstate business they are taxable upon both; and the imposition of the tax upon a foreign corporation's capital employed in manufacturing here, when it was also engaged in selling goods manufactured outside, is not in conflict with the Federal Constitution.

*People ex rel. Am. S. F. Co.* v. *Roberts*, 29 App. Div. 585, reversed.

(Argued January 9, 1899; decided February 28, 1899.)

APPEAL from a judgment and order of the Appellate Division of the Supreme Court in the third judicial department, entered May 18, 1898, reversing on certiorari a determination of the comptroller of the state assessing a corporation tax upon the relator for the three years ending November 1, 1893.

The relator is a foreign corporation organized under the laws of the state of New Jersey with a capital of $3,750,000 for the purpose of carrying on the business of " the manufacture and sale of soda and mineral water apparatus and of supplies for dealers in and dispensers of soda and mineral waters," the manufacture and sale of various other articles pertaining to that business and other business not directly connected therewith. Under its charter privileges the relator acquired the business of James W. Tuffts of Boston, A. D. Puffer & Sons of Boston, Charles Lippincott & Co. of Philadelphia and the John Matthews Apparatus Co. of New York.

It appears by the petition of the relator for a rehearing before the comptroller, by the affidavit of its secretary and the testimony given upon such rehearing, that it was engaged in business in this state at three different places in the city of New York. It conducted business at First avenue between Twenty-sixth and Twenty-seventh streets under the name of the John Matthews Apparatus Company, at 10 Warren street under the name of James W. Tuffts, and at 41 Centre street under the name of A. D. Puffer & Sons.

22

At its place of business on First avenue it manufactured and sold soda and mineral water apparatus, and the various articles, ornaments and flavoring extracts used in and upon such apparatus. At the Warren and Centre street houses it was engaged in the business of selling merchandise of the same general character as that manufactured by the John Matthews Apparatus Company, but whatever was sold at those places was manufactured in Boston, at which place the relator has its principal place of business. At the Tuffts and Puffer branches the relator had salesrooms in which samples of the goods manufactured in Boston were kept, and orders for such goods were generally filled by their being shipped from Boston, to which place all moneys received therefor were transmitted, but occasionally it sold articles that were kept in the New York stores as samples and then procured others to take the place of those sold.

The relator had all its glass made by a company in Poughkeepsie, which it purchased and sold in connection with the apparatus it manufactured, and sometimes to supply customers who required the glass only. This business amounted to about six thousand dollars annually, and the average stock of glass carried by the relator was of the value of from six to seven thousand dollars. It also imported marble which it sold, and of which it carried a stock of the value of twenty thousand dollars. This marble was sawed and polished, and the slabs were furnished with the soda fountain apparatus. During the years 1890, 1891, 1892 and 1893, the relator sold at the Tuffts and Puffer houses some of its fountains on conditional sales by which it retained the ownership, the average value of which was about sixteen thousand dollars. The value of the stock carried by the relator at its branches in New York was about ten thousand dollars at the Tuffts branch, and about seventy-five hundred dollars at the Puffer branch. It paid about three thousand dollars a year rent for the place where the Tuffts business was carried on, and about twenty-five hundred dollars a year for the place where the Puffer business was transacted.

The comptroller assessed upon the relator, a tax for the three years, amounting to eighteen hundred dollars under chapter 542 of the Laws of 1880, as amended by chapter 522 of the Laws of 1890.

*John C. Davies, Attorney-General,* and *G. D .B. Hasbrouck, Deputy Attorney-General,* for appellant.   When the relator sells its goods and wares manufactured in Massachusetts through a salesroom and agents here, it does business in this state other than carrying on manufacture; and when it keeps on hand samples of the value of $17,500, and goods sold on conditional sales valued at $16,000, has leaseholds of real estate and pays salaries, it has capital employed here.   (*People ex rel.* v. *Roberts,* 29 App. Div. 587; *People* v. *H. S. M. Co.,* 105 N. Y. 83; *People ex rel.* v. *Campbell,* 139 N. Y. 68; *People ex rel.* v. *Roberts,* 8 App. Div. 202; *People ex rel.* v. *Roberts,* 22 App. Div. 282; *People ex rel.* v. *Wemple,* 133 N. Y. 325; 131 N. Y. 68.)   If the relator was engaged in interstate commerce in this state, as it claims, then it was not wholly engaged in carrying on manufacturing in this state and, therefore, it is amenable to the tax.   (Suth. on Stat. Const. § 364; 114 U. S. 211; *People ex rel.* v. *Wemple,* 131 N. Y. 68; 134 U. S. 23; *Pullman Palace Car Co.* v. *Pennsylvania,* 141 U. S. 23; *People ex rel.* v. *Wemple,* 138 N. Y. 1; *People ex rel.* v. *Roberts,* 19 App. Div. 576; 154 N. Y. 101; *Woodruff* v. *Parhan,* 8 Wall. 123.)

*John B. Green* and *Edmund L. Cole* for respondent.   The business carried on by the relator at First avenue under the name of " John Matthews Apparatus Company " was wholly manufacturing.   If any part of such business was not manufacturing, such part was *ultra vires.*   (Morawetz on Corp. §§ 320, 327, 337; *Curtis* v. *Leavitt,* 15 N. Y. 64; *People ex rel.* v. *Campbell,* 144 N. Y. 166; *Lancaster* v. *A. I. Co.,* 140 N. Y. 576; *P. F. Assn.* v. *New York,* 119 U. S. 110.)   The business of the relator other than manufacturing was interstate commerce.   (*Coit* v. *Sutton,* 102 Mich. 324; *Osborne* v. *State of Florida,* 33 Fla. 162; *S. R. R. Co.* v. *Asheville,* 69 Fed. Rep. 359; *Webster* v. *Bull,* 68 Fed. Rep. 183; *Hunting-*

172 People ex rel. A. S. Fountain Co. *v.* Roberts. [Feb.,

Opinion of the Court, per Martin, J. [Vol. 158.

*ton* v. *Mahan*, 142 Ind. 695; *Welton* v. *State of Missouri*, 1 Otto, 275; *Robbins* v. *Taxing Dist.*, 120 U. S. 489; *Crutcher* v. *Kentucky*, 141 U. S. 47; *Emert* v. *State of Missouri*, 156 U. S. 296; *Commonwealth* v. *Harmel*, 166 Penn. St. 89.) The fact that the relator engaged in interstate commerce in this state does not deprive it of the benefit of exemption as to the part wholly engaged in manufacturing. (*People ex rel.* v. *Wemple*, 138 N. Y. 1; *People ex rel.* v. *Roberts*, 22 App. Div. 282; *Tracy* v. *T. & B. R. R. Co.*, 38 N. Y. 433; *Wynkoop* v. *Halbut*, 43 Barb. 266; *Murray* v. *N. Y. C. R. R. Co.*, 4 Keyes, 274; Dwarris on Stat. 690; *Crutcher* v. *Kentucky,* 141 U. S. 47;, *Emert* v. *State*, 156 U. S. 296; *Robbins* v. *Tax. Dist.*, 120 U. S. 489; *Brennan* v. *City of Titusville*, 153 U. S. 289; *B. Z. & M. Co.* v. *Clute*, 7 Misc. Rep. 124.) If the charter of the relator gave it powers other than those of manufacture and sale, such powers not having been exercised in this state, the sole fact that it had such powers does not determine its liability to taxation. (*N. G. L. Co.* v. *Brooklyn*, 89 N. Y. 409; *People* v. *K. I. Co.*, 99 N. Y. 181; *People ex rel.* v. *Wemple*, 129 N. Y. 664; *Comrs.* v. *P. I. Co.*, 157 Penn. St. 500; *P. P. Co.* v. *State Board*, 51 N. J. L. 75; *People* v. *Am. B. T. Co.*, 117 N. Y. 241.)

Martin, J. The relator seeks to defeat this appeal upon the ground that the portion of its capital which was employed by it in this state was used in carrying on the business of manufacturing, and that, although it was also engaged in the business of selling in this state goods manufactured by it elsewhere, it was not liable to be assessed for a corporation tax under the statutes relating to that subject. (Laws 1880, chap. 542; Laws 1890, chap. 522.) In other words, the relator claims that so far as its capital was employed in this state in manufacture, it was exempt under the statute of 1890, and that its other business of selling goods manufactured elsewhere was interstate commerce, and, therefore, also exempt because the legislature had no power to impose a tax upon that portion of its business.

There seems to be no complaint as to the amount or method

of making the assessment if the relator was properly taxable upon the portion of its capital employed in this state in manufacture, but its claim is that the portion of its capital thus employed was exempt under the statute and that its business other than manufacturing was interstate commerce, and, consequently, also exempt.

The statute relating to the taxation of corporations, joint stock companies and associations, so far as material to the questions involved, declares, " Every corporation * * * (or) company * * * formed under, by or pursuant to law in this state or in any other state or country, and doing business in this state, except only * * * " banks, insurance companies and " manufacturing or mining corporations, or companies wholly engaged in carrying on manufacture, * * * shall be liable to and shall pay a tax, as a tax upon its franchise or business, into the state treasury annually, to be computed as follows."

The statute of 1880 was amended in 1890 (Chap. 522) by inserting the words " wholly engaged in " before the words " carrying on manufacture." The obvious purpose of this amendment was to qualify and limit the exemption as it formerly existed. It is to be observed that under the statute as it existed when this tax was imposed, a corporation, foreign or domestic, exempted from taxation was only one which was " wholly engaged in carrying on manufacture * * * within this state." The plain reading of this statute and, consequently, its evident purpose and intent was to limit this exception to such corporations or companies only. Therefore, the only ground upon which the relator can rely for exemption from taxation in this state is that it was " wholly engaged in manufacture." If it was engaged in manufacturing and other business as well, it is not protected by the exception, as the words " wholly engaged in " qualify the exemption as it previously existed, and limit it to corporations or companies whose corporate or company business is exclusively that of manufacture. (*People ex rel.* v. *Campbell*, 144 N. Y. 166; *People ex rel. W. E. Co.* v. *Campbell*, 145 N. Y. 587.)

Manifestly, the business of the relator in this state was not confined to manufacturing alone. By its verified petition, by the affidavit of its secretary and by his testimony given upon the hearing, it appears that it had at least two places within the state where it had capital invested and was engaged in business other than manufacture.

It is, however, claimed that the other business carried on by it in this state was interstate commerce. Even if that were to be admitted, still, as the relator was engaged in business other than manufacturing, it was clearly not within the letter or spirit of the statute excepting manufacturing corporations or companies from taxation. Obviously, the relator was engaged in this state in other business than manufacturing, and, therefore, was not included within the exemption of the statute. (*People ex rel. Railways Co.* v. *Roberts,* 154 N. Y. 1.)

Nor does the fact that the relator's business other than manufacturing was interstate commerce prevent the state from subjecting its business to taxation where there was no hostile discrimination against the relator in the assessment thereof. (*People ex rel. Penn. R. R. Co.* v. *Wemple,* 138 N. Y. 1.) We think that the imposition of a tax upon the relator's capital employed in manufacturing, when it was also engaged in selling goods manufactured outside, was not in conflict with the Federal Constitution which prohibits the laying of any imposts or duties on imports or exports, and confers upon Congress the power to regulate commerce. By this statute domestic and foreign corporations are taxed alike upon their franchise or business transacted within the state, and if they are engaged in state as well as interstate business, they are taxable upon both. (*People ex rel. Penn. R. R. Co.* v. *Wemple, supra; People ex rel. Matheson* v. *Roberts,* 158 N. Y. 162.)

The judgment and order of the Appellate Division should be reversed and the determination of the comptroller affirmed, with costs.

All concur.

Judgment and order reversed, etc.