NEW YORK *ex rel.* EDWARD AND JOHN BURKE, LIM-
ITED, *v.* WELLS *et al.*, AS COMMISSIONERS OF TAXES
AND ASSESSMENTS OF THE CITY OF NEW YORK.

ERROR TO THE SUPREME COURT OF THE STATE OF NEW YORK.

No. 39. ˙ Argued November 5, 6, 1907.—Decided January 6, 1908.

While the State may not directly tax imported goods or the right to sell
them, or impose license fees upon importers for the privilege of selling,
so long as the goods remain in the original packages and are unincorporated
into the general property, *Brown* v. *Maryland*, 12 Wheat. 419, when the
article has lost its distinctive character as an import and been mingled
with other property, it becomes subject to the taxing power of the State.
*May* v. *New Orleans*, 178 U. S. 496.

When a foreign manufacturer establishes a permanent place of business
in this country for the sale of imported articles, although the bulk of
the proceeds may be sent abroad, such proceeds as are retained here as
cash in bank and notes receivable, and are used in connection with the
business, lose the distinctive character which protects them under the
Federal Constitution and become capital invested in business in the
State and carried on under its protection and are subject to taxation by
the laws of that State.

Whether this rule applies to open accounts for goods sold, not decided, the
state court not having passed on that question.

184 N. Y. 275, affirmed.

˙ THIS is a writ of error to the Supreme Court of the State of
New York to review the judgment rendered upon a remittitur
from the Court of Appeals of the same State, wherein an assess-
ment of taxes against the plaintiff in error, imposed by the
Board of Taxes and Assessments of the City of New York, who
are the defendants in error, was affirmed. The taxes were for
the year 1903, and were imposed under the statutes of the
State of New York taxing non-residents of the State doing
business in the State on the capital invested in such business,
as personal property at the place where such business is carried
·on, to the same extent as if they were residents of the State.
N. Y. General Tax Law, chap. 908, Laws of 1896, § 7.

The respondents, in the return to the writ of certiorari issued

by the Supreme Court of New York, stated that the method by which the assessment for the year 1903 was arrived at was as follows:

"On the statement submitted to us (Schedule A) it appeared that the relator was a corporation organized under the laws of the Kingdom of Great Britain and Ireland, that it had procured a certificate authorizing it to do business in this State, that the business of the corporation proposed to be carried on within this State, stated in its application under the provisions of chapter 687 of the Laws of 1892, was importers, that the place within the State named in said application as its principal place of business was 409 West 14th street, that the company transacted business within this State at No. 409 West 14th street, in the City of New York, Borough of Manhattan, and that the company was assessed by the State Comptroller for $124,000.

"It further appeared that the relator kept a wareroom and offices in the Borough of Manhattan, to which it sent its products from Ireland in unbroken original packages to be sold, that on all these goods it paid duties to the United States, that the proceeds of the goods were at once remitted to the main office in Dublin, after reserving the necessary amount for paying the expenses of the business conducted in the City of New York, that the value of the goods on hand, as shown in the statement, was about the average amount of the goods usually kept here for sale, that the greater part of the cash on hand and in bank was in process of transmission to the main office, that the bank account was to a very large extent kept to cover the payment of duties on the goods shipped here for sale, and that the entire amount of bills receivable resulted from the sales of imported goods in unbroken original packages, as did the cash on hand and in bank.

The amount receivable on notes and open accounts was stated to be:......................... $111,751.53

The value of goods, wares and merchandise in this State...................................... 45,841.21

The value of safes, fixtures and furniture in this
State...................................... $   797.68
Cash on hand and in bank.....................   6,122.63
Cost price of imported goods on hand in unbroken
original packages.........................   45,841.21
Amount of bills and accounts payable, incurred
for items included in the sales and assets enu-
merated ......:........................   24,053.91

"It was admitted that the amount invested in business in
this State was $797.68, which was the value of the relator's
safes, fixtures and furniture in this State.

"From all this evidence we determined that the relator had
on the second Monday of January, 1903, established and was
conducting a permanent and continuous business in this State.

"We further determined that the amount receivable on notes
and open accounts, and the cash on hand and in bank, con-
stituted capital of the relator invested in its business in this
State, and that such items were properly assessable by us.
We accordingly fixed the assessment against the relator for
the year 1903 for capital invested in business in this State at
the sum of $94,600, which amount was approximately the
aggregate value of the amount receivable on notes and open
accounts, the safes, fixtures and furniture in this State, and
the cash on hand and in bank, less the amount of bills and
accounts payable incurred for the items included in the sales
and assets enumerated in said statement."

The assessment was confirmed when brought for review
upon certiorari before the New York Supreme Court, which
judgment was affirmed in the Appellate Division, and the latter
judgment was affirmed by the Court of Appeals (184 N. Y. 275),
from which judgment, upon remittitur, the judgment was
rendered in the Supreme Court to which this writ of error is
prosecuted.

*Mr. Edmund Wetmore* for plaintiff in error:

A state tax upon the proceeds received for the sale of an

article in original and unbroken packages, imported only for sale, and upon which duties have been paid, and where the only disposition made of said proceeds is to collect them and at once remit them to the importer abroad, after deducting the amount of duties paid and the expenses necessarily incident to said importation and sale, is a tax upon imports and a violation of the Constitution of the United States. *Brown* v. *Maryland,* 12 Wheat. 436; *Fairbank* v. *United States,* 181 U. S. 283, 295; *The People* v. *Maring,* 3 Keyes, 374, 376.

A tax upon the sale of imported goods, as above set forth, is not affected by the form of the tax, whether it is *eo nomine* upon the right to sell, or upon the proceeds, or upon the business of importing, or in any other form, provided it is the same in effect as if it was upon the right to sell, and must be paid by the importer in like manner as a direct duty on the article itself would be paid. *Cook* v. *Pennsylvania,* 97 U. S. 566; *McCulloch* v. *Maryland,* 4 Wheat. 436; *Crandall* v. *State of Nevada,* 6 Wall. 35; *Case of the State Freight Tax,* 15 Wall. 232; *Western Union Tel. Co.* v. *Alabama,* 132 U. S. 472; *Fargo* v. *Michigan,* 122 U. S. 230; *Postal Telegraph Cable Co.* v. *Adams,* 155 U. S. 688; *Philadelphia Steamship Co.* v. *Pennsylvania,* 122 U. S. 236.

The tax complained of was, in effect, levied on the goods of the plaintiff in error, and paid by the plaintiff in error for the right to sell them, and the proceeds from which the tax was deducted had not become part of the common mass of property within the State of New York, nor were they invested therein.

The proceeds of the imported goods represented by bills receivable and cash in bank were not taxable by the State, as they had not become part of the common mass of property within the State and were not invested in business there. Their identity as the proceeds of the sale of the goods in original packages was never lost. They were transmitted to the plaintiff in error as soon as they were transmissible. The plaintiff in error is a foreign resident, did no other business in the State

of New York except the sale of its products in original packages and the collection and remittance of the said proceeds, and there is no proof or assertion that it had any other property in the State than said goods and proceeds outside of office furniture and fixtures. The said proceeds were not invested in the State of New York and did not constitute taxable capital invested in business in said State.

The fact that the plaintiff in error does business in New York is immaterial. Its claim is that it has received from the United States the right to sell certain goods while in their original packages, whether said sales are made in the course of that business or not, and that the State cannot impose a tax, in any form which directly impairs that right, whether the said goods are or are not capital invested in the State, and that the tax on the proceeds of said sale is a direct impairment of that right.

The tax cannot be sustained simply as a tax on business. *Crandall* v. *State of Nevada*, 6 Wall. 35, and cases cited *supra*.

The sale of the goods in the original packages is the conversion of said goods into money. The right to make that conversion is the very thing which the Constitution protects. Mere conversion of the imported goods which are an asset of the business, into an asset of another form, namely, money paid or to be paid, is not such an incorporation of the proceeds with the general property of the country as renders them subject to state taxation. *People ex rel. National Sewing Machine Co.* v. *Feitner*, N. Y. Law Journal, March 15, 1899.

The fact that part of the proceeds represented by deferred payments may be retained and expended for expenses incidental to the original sales or in payment of duties on subsequent importations because duties must be paid in advance of taking the goods out of the custom house, does not relieve the tax under consideration from its unconstitutional character.

*Mr. George S. Coleman,* with whom *Mr. Francis K. Pendleton* was on the brief, for defendants in error:

The credits and moneys of the plaintiff in error, representing

proceeds of sales of its goods within the State of New York, constituted capital invested in business in said State under the provisions of the tax law.

From the fact of the final confirmation of the assessment in this case by the highest court of the State of New York, it will, we assume, be accepted as the law of that State, without argument or citation of other authorities, that cash in hand or in bank and bills and accounts receivable, being the proceeds of goods sold in regular course of a continuous business, constitute capital invested in such business. *People ex rel. Farcy & Oppenheim Co.* v. *Wells,* 183 N. Y. 264.

The tax imposed upon the credits and moneys representing proceeds of sales did not contravene the provisions of the Federal Constitution.

The tax imposed on the assessment in question violates none of the rules established by the highest court. The value of the imported goods in original unbroken packages was deducted from the total assets, so that there is no tax imposed on imports as such. It is not a license tax that an importer must pay before he can sell, nor a tax upon the sales made by him throughout the year. It is merely the annual tax on a part of the general mass of taxable property in the State. *Brown* v. *Maryland,* 12 Wheat. 419; *Cook* v. *Pennsylvania,* 97 U. S. 566, and *Warring* v. *Mayor,* 8 Wa'l. 110, distinguished.

MR. JUSTICE DAY, after making the foregoing statement, delivered the opinion of the court.

It is the contention of the plaintiff in error that the assessment upon $94,617.93, made upon office furniture, cash on hand and in bank and the amount receivable upon bills and accounts payable, is void, except as to the item of office furniture, because of the protection afforded by the Constitution of the United States against taxes by States upon imports.

As to the open accounts which might be included in the bills receivable, the Court of Appeals declined to pass upon the

validity ·of the taxes on them, as, according to the practice in that State, it was incumbent upon the relator to point out what part of the bills receivable were of that class, but did hold that the cash, and the notes which it was admitted were held in New ·York until maturity, although the proceeds of sale of goods imported and sold in the original packages, were properly within the taxing power of the State of New York under the section of the statute referred to, and that such exercise of power did not violate the Constitution. of the United States.

The section of the Constitution relied upon by the plaintiff in error in the argument in this court is Article I, § 10, which provides:

·"No State shall, without the consent of the Congress, lay any imposts or duties on imports or exports, except what may be absolutely necessary for executing its inspection laws; and the net produce of all duties and imposts, laid by any State on imports or exports, shall be for the use of the Treasury of the United States; and all such laws shall be subject to the revision and control of the Congress."

The contention of the learned counsel for plaintiff in error is succinctly stated in his brief as follows:

"The ground taken by the plaintiff in error is that the tax on the proceeds of the goods in original packages in the course of transmission to the owner abroad is in essence and effect a tax upon the sale of said goods, and, therefore, a tax upon imports and a violation of the Constitution under the principle laid down in *Brown* v. *State of Maryland*, 12 Wheat. 419, and the cases following that decision."

The case referred to (*Brown* v. *Maryland*) is the leading one upon this subject, and has been cited perhaps as often as any of the great decisions of Chief Justice Marshall, and not attempted to be modified in the subsequent decisions of this court. In that case this section, as well as Article I, § 8, the commerce clause of the Constitution, were given consideration by the court. It was held that an act of the State of Maryland,

which required an importer of foreign merchandise, under certain penalties, to take out a license from the State, for which he should be taxed $50, before he should be authorized to sell the imported articles in the original packages, was in violation of the commerce clause of the Constitution and within the prohibition on the States of the right to levy duty on importations. And in this connection the Chief Justice discussed and laid down certain general principles by which to determine whether an act of the legislature does interfere with the paramount purpose of the Constitution in these respects.

In a late case in this court *Brown* v. *Maryland* is fully considered, and the following propositions are said to be established in that case:

"1. That the payment of duties to the United States gives the right to sell the thing imported, and that such right to *sell* cannot be forbidden or impaired by a State:

"2. That a tax upon the thing imported during the time it retains its character as an import and remains the property of the importer, 'in his warehouse, in the original form or package in which it was imported,' is a duty on imports within the meaning of the Constitution; and

"3. That a State cannot, in the form of a license or otherwise, tax the right of the importer to *sell;* but when the importer has *so acted upon* the goods imported that they have become incorporated or mixed with the general mass of property in the State, such goods have then lost their distinctive character *as imports*, and have become from that time subject to state taxation, not because they are the products of other countries, but because they are property within the State in like condition with other property that should contribute, in the way of taxation, to the support of the government which protects the owner in his person and estate." *May* v. *New Orleans*, 178 U. S. 496, 507.

In *Cook* v. *Pennsylvania*, 97 U. S. 566, it was held that the tax by the State on the amount of sales of goods made by an auctioneer of imported goods, before incorporation into

the general property in the State, was a tax on the goods themselves. Previous cases were reviewed by Mr. Justice Miller, and the result of them stated to be, p. 573:

"The tax on sales made by an auctioneer is a tax on the goods sold, within the terms of this last decision, and, indeed, within all the cases cited; and when applied to foreign goods sold in the original packages of the importer, before they have become incorporated into the general property of the country, the law imposing such tax is void as laying a duty on imports."

And in the late case of *The American Steel & Wire Co. v. Speed*, 192 U. S. 518, the distinction was pointed out between taxes upon goods imported from abroad, imported in the legal sense, and those sent from another State; as to which latter class of merchandise the States have the power, after the goods reach their destination and are held for sale, to tax them. Whereas, following *Brown* v. *Maryland*, where goods are imported in the strict sense they preserve their character as imports so long as they are not sold in the original packages in which they are imported or by the act of the importer incorporated into the general property of the State.

It may be stated as the result of the decisions that as to imported goods the State may not impose taxes directly upon the goods or upon the right to sell them, or impose license fees upon importers for the privilege of selling, so long as the goods remain in the original package unincorporated into the general property. All such attempts at taxation are in violation of the Constitution and void.

But in *Brown* v. *Maryland*, and in subsequent cases in this court, the principle is recognized, as was stated by Chief Justice Marshall in the original case, that this prohibition in the Constitution should be carried "no further than to prevent the States from doing that which it was the great object of the Constitution to prevent;" which was interference with either the collection of duties upon imports or the right of the importer, who has paid duty, to sell the imported goods in the unbroken packages in which they were imported.

The Chief Justice instanced the case of the pedler who carried goods unpacked from the original packages for sale through the country, and the case of the importer of plate for his own use, whose privileges did not extend beyond the protection of the right of the importer to sell in the original packages, and whose conduct in reference to the goods had been such as to destroy their character as original packages and mingle them with the goods and property of the country, and thus, notwithstanding their importation, to make them, for the purpose of taxation, part of the general property of the country and liable to contribute in consideration of the protection received, to the general welfare, by way of taxes levied for public purposes. This right of taxation by the State was distinctly recognized in *May* v. *New Orleans*, 178 U. S. 496, where the goods imported in the original packages were separated therefrom and placed on the shelves and counters of the importing merchant.

The exact question in this case is, has a condition of facts arisen which renders applicable the principle that the thing taxed has lost its distinctive character as an import in such sense that it has become subject to the taxing power of the State?

The power of the State of New York to impose a tax upon the cash and these notes as capital employed in a business within the State, laying aside for the moment the question as to their character as proceeds of the sale of imports, cannot be doubted in view of the previous decisions of this court. Particularly the recent case of *Metropolitan Life Insurance Co. of New York* v. *City of New Orleans*, decided at the last term, 205 U. S. 395, wherein it was held that those engaged in the business of lending money in a State, being non-residents of the same, might be taxed upon the capital employed in such business, precisely as the State could tax the capital of its own citizens.

The constitutional protection as we have seen is intended to secure the right to bring in and to sell in the original packages

the goods imported; and, that this right may not be impaired, direct taxes upon goods or license taxes for the privilege of sale cannot be levied, and the decision in *Brown* v. *Maryland* recognizes that the importer may lose this right of protection by mingling such goods with other property and altering their character as importations in original packages, and making them by his conduct subject to the taxing power of the State. And we think the same principle may be applied to the proceeds of the sale of the goods, which, while not directly taxable as such, any more than the goods themselves, may be dealt with by the owner in such wise as to become subject to taxation as other property.

And we think such a case is presented in the facts now before us. The plaintiffs in error have established a warehouse and place of business in the State of New York for the sale of their imported goods. This business is of a permanent character; the goods are constantly received and sold and replaced by other goods. Cash is deposited in bank in New York and is subject to use as the needs of the business may require. In this business it takes notes for sales of such goods. These notes are not directly transmitted to its home office in Dublin, but are held for collection in connection with the business in New York, and while the bulk of the proceeds may be sent abroad, sufficient sums are retained to meet the expenses of the business and pay duties on subsequent importations of goods.

We think the constitutional protection afforded the importer against state action does not require the property thus held and used to be exempted from state taxation. While it is true that a large proportion of proceeds of the notes after collection are sent to the home office of the plaintiffs in error, they are not taxed in transit as the proceeds of sale of imported goods, for the notes are held in New York for collection, and when paid a part of the proceeds are held for other purposes in connection with the business and the balance remitted to the home office.

By reason of this course of conduct we think these proceeds have lost that distinctive character which would give them the right to the protection of the Federal Constitution under the clause invoked, and the cash taxed and the amount of these notes have become capital invested in business in the State of New York, which business is carried on under the protection of the laws of that State, and, so far as the capital is invested in it, is subject to taxation by the laws of the State.

We think the Court of Appeals did not err, and the judgment of the Supreme Court rendered upon remittitur from the Court of Appeals is

*Affirmed.*