195 Md. 206 (1950)
73 A.2d 12
WESTERN MARYLAND RAILWAY COMPANY
v.
STATE TAX COMMISSION OF MARYLAND CANTON RAILROAD COMPANY
v.
ROGAN ET AL.
[Nos. 76, 96, October Term, 1949.]
Court of Appeals of Maryland.
Decided April 19, 1950.
W. Harvey Small with whom was William C. Purnell on the brief, for the appellant, the Western Maryland Railway Company.
John Henry Lewin, with whom were J. Crossan Cooper, Jr., and Venable, Baetjer & Howard on the brief, for the appellant, the Canton Railroad Company.
Hall Hammond, Attorney General, and Harrison L. Winter, Assistant Attorney General, for the appellee.
COLLINS, J., delivered the opinion of the Court.
These appeals are taken by Western Maryland Railroad Company (Western Maryland) and Canton Railroad Company (Canton), from decrees of Circuit Court No. 2 of Baltimore City sustaining final assessment against the appellants made by the Maryland State Tax Commission (the Commission) for gross receipts taxes imposed by Article 81, section 95 of the 1943 Supplement of the Code.
*209 In the case of Western Maryland the contested taxes for the years 1946 and 1947 are computed upon its gross receipts within the State of Maryland for the preceding calendar years of 1945 and 1946, respectively. In the case of Canton the contested taxes for the year 1947 were computed upon its "gross receipts for the calendar year 1946" within the State of Maryland. Both appellants claim that certain portions alleged to have been derived from their services rendered in "the importing and exporting process" should not have been included within the total amount of gross receipts subject to the tax. They claim that Article 1, Section 10, Clause 2, of the Constitution of the United States grants immunity to that portion of the gross receipts.
The pertinent provisions of Article 81, sections 94 1/2 and 95, 1943 Supplement of the Code follow:
"94 1/2. The phrases `gross receipts', `total receipts', `gross earnings', `total earnings' and `all earnings', as used in Sections 95 to 100, inclusive, mean in the case of railroads and other public service corporations, the operating revenues thereof, without any deductions or credits of any kind whatsoever. When any public service corporation is engaged in more than one class of business and one or more classes thereof is business not subject to the gross receipts tax or subject thereto at different rates, the operating revenues of the class or classes of business subject to such tax at different rates shall be reported separately and taxed at the rate or rates applicable to such class or classes of business. This section shall not be construed as implying that in the absence of this section the requirements of Sections 95 to 100, inclusive, could properly be otherwise construed.
"95. (a) A State tax as a franchise tax is hereby levied annually for the year 1930 and subsequent years measured by the gross receipts for the preceding calendar year, of:
"(1) All domestic or foreign railroad companies, whose roads are worked by steam, doing business in this State, at the following rates, to wit:
*210 "One and one-quarter per centum on the first $1,000 per mile of gross earnings, or on the total earnings if they are less than $1,000 per mile; and
"Two per centum on all gross earnings above $1,000 and up to $2,000 per mile; and
"Two and one-half per centum on all earnings in excess of $2,000 per mile.

* * * * * * * * *
"(b) If any such railroad company has part of its road in this state and part thereof in another State or States, such company shall return a statement of its gross receipts over its whole line of road, together with a statement of the whole length of its line and the length of its line in this State, and such company shall pay to the State, at the said rates hereinbefore prescribed upon such proportion of its gross earnings as the length of its line in this State bears to the whole length of its line; and similar statements shall be made by each oil pipe line company, and each sleeping car, parlor car, express or transportation company, telephone or telegraph or cable company, so that the proportion of the said gross earnings of the said companies, respectively, accruing, coming from their business within this State, may be accurately ascertained, or said statement may be made in any other mode satisfactory to and required by the State Tax Commission. The said gross receipts taxes shall be due and payable at the treasury on or before the first day of July in each year.
"(c) Every partnership or individual engaged in any of the above enumerated branches of business in this State shall be subject to the tax imposed by this Section and comply with all provisions relating thereto as if such firm or individual were a corporation."
The so-called Import-Export clause of the Constitution of the United States, Article, 1, Section 10, Clause 2, follows: "No State shall, without the Consent of Congress, lay any Imposts or Duties on Imports or Exports, except what may be absolutely necessary for executing its inspection Laws: and the net Produce of all Duties and *211 Imposts, laid by any State on Imports or Exports, shall be for the Use of the Treasury of the United States; and all such Laws shall be subject to the Revision and Control of the Congress." See The Federalist, No. 42; 3 Elliot's Debates, 483; 14 U. of Chicago Law Review, 672.
The operating revenues claimed by the appellants to be exempt were received for transportation, switching, storage, crane privileges, wharfage and weighing of coal, grain, ores, and other miscellaneous commodities in transit between foreign ports and points within the United States. Appellant (Canton) claims that the tax in question is an occupation tax exacted for the privilege of engaging in the import-export process and therefore unconstitutional. This Court in a long line of cases has sustained the statutory declaration, supra, that the tax here in question is a franchise tax in lieu of all other State property taxes.
In the case of State v. Philadelphia, Wilmington & Baltimore Railroad Company, 45 Md. 361, 24 Am. Rep. 511, the Court had before it Chapter 234 of the Acts of 1872 which was the predecessor of the present Gross Receipts Tax. This Court said in that case, 45 Md. at page 379, in holding the tax constitutional: "Properly speaking, the tax is not imposed upon the gross receipts; they are referred to not as descriptive of the subject to be taxed, but merely as furnishing the basis of ascertaining the amount of tax to be paid. If then it is not a tax upon property, what is it? We say, it is a tax upon the franchise of railroad companies, measured by the extent of their business." At page 381 of 45 Md. it was said: "Being of opinion, then, that the tax upon gross receipts of railroad companies, imposed by the Act of 1872, is a tax upon the franchise of such companies, and not upon their property, * * * we come to the question whether the defendant corporation is exempt from the payment of said tax?" State v. Baltimore & O.R. Co., 1878, 48 Md. 49; Cumberland & Pennsylvania R. Co. v. State, 1901, 92 Md. 668, 48 A. 503, 52 L.R.A. 764; State v. U.S. Fidelity & Guaranty Co., 1901, 93 Md. 314, 48 A. 918; *212 State v. Central Trust Co., 1907, 106 Md. 268, 67 A. 267; Postal Telegraph Cable Co. v. Harford County Com'rs, 1917, 131 Md. 96, 101 A. 600; Rogan v. Baltimore & Ohio Railroad Co., 1947, 188 Md. 44, 52 A.2d 261; State Tax Commission v. Western Maryland Railway Co., 1947, 188 Md. 240, 246, 52 A.2d 615.
Western Maryland makes no contention that this is not an in lieu franchise tax. Canton to sustain its contention that the tax is an occupation tax and not an in lieu franchise tax cites Section 144 of Article 81 of the Code (1947 Supplement), which imposes a general franchise tax on corporations. Section 144(b) explicitly says that the tax is imposed "for its franchise to be a corporation." Sections 95, supra, and 144 supra, tax different kinds of franchises. The franchise to operate a railroad is of course different from the ordinary privileges conferred by a franchise to operate as a corporation.
Canton also contends that the tax here in question is not a franchise tax in lieu of property taxes because it is not proportionate in amount to the property taxes to which it would have been liable. Canton bases this argument on the fact that if the ordinary rate of State taxes is applied to the assessed value of its property for the calendar year 1946 its taxes would have been $3800 while its gross receipt taxes for that period amount to $39,092. Appellee points out in its brief that when Chapter 965 of the Acts of 1945, (substantially reenacted, except as to rates, by Chapter 677 of the Acts of 1947 and codified as Sections 7(15), 25(h), 94 1/2 and 95 of Article 81, 1947, Supplement of the Code), is taken into consideration Canton's ad valorem property tax for the calendar year of 1946, as taxes on operating property, including land, would have been $40,681, an amount of $1000 "more than the amount of gross receipt taxes imposed for the gross receipts derived during that calendar year." Nashville C. & St. L. Ry. v. Browning, 310 U.S. 362, 60 S.Ct. 968, 84 L.Ed. 1254; Ohio River & W.R. Co. v. Dittey, 232 U.S. 576, 34 S.Ct. 372, 58 L.Ed. 737.
*213 Appellant (Canton) states in its brief: "If it were an original proposition, one might well argue that the phrase `any Imposts or Duties on Imports or Exports' was intended to mean no more than property taxes on goods while they constitute imports or exports, or, at the most, taxes in the nature of a tariff. The construction which the Supreme Court has placed upon these words through the years is to the contrary."
The in lieu franchise tax on apportioned gross income has been held valid under the Commerce Clause of the Constitution, art. 1, § 8, cl. 3, because it is not a direct tax on interstate business, not because the tax does not in the end increase the cost of interstate business. Such taxes are held valid because they are in lieu taxes and substitute for a property tax which is constitutional. State of Maine v. Grand Trunk Railroad Co., 1891, 142 U.S. 217, 12 S.Ct. 121, 163, 35 L.Ed. 994; U.S. Express Co. v. Minnesota, 1912, 223 U.S. 335, 32 S.Ct. 211, 56 L.Ed. 459; Cudahy Packing Co. v. Minnesota, 1918, 246 U.S. 450, 38 S.Ct. 373, 62 L.Ed. 827; Northwestern Mut. Life Insurance Co. v. Wisconsin, 1918, 247 U.S. 132, 38 S.Ct. 444, 62 L.Ed. 1025; Great Northern Railway Co. v. Minnesota, 1929, 278 U.S. 503, 49 S.Ct. 191, 73 L.Ed. 477; Illinois Central Railway Co. v. Minnesota, 1940, 309 U.S. 157, 60 S.Ct. 419, 84 L.Ed. 670; State Tax Commission v. Western Maryland Railway Co., 188 Md. 240, 52 A.2d 615, supra.
An ad valorem property tax on tangible and intangible personal property both used in and derived from the process of importing and exporting is valid. Wheeling, P. & Cincinnati Transport Co. v. Wheeling, 1879, 99 U.S. 273, 25 L.Ed. 412; People of State of New York ex rel. Burke v. Wells, 208 U.S. 14, 28 S.Ct. 193, 52 L.Ed. 370. If such an ad valorem tax is constitutional it certainly appears that a franchise tax in lieu of such direct ad valorem taxes is not barred by the Import-Export Clause. People ex rel. Parke, Davis & Co. v. Roberts, 1898, 171 U.S. 658, 19 S.Ct. 70, 43 L.Ed. 323, *214 People ex rel. American Soda Fountain Co. v. Roberts, 1899, 158 N.Y. 168, 52 N.E. 1104.
Both Canton and Western Maryland contend that this tax measured by the gross receipts for handling articles previously imported or to be exported and in "the importing and exporting process," is prohibited by the Import-Export Clause. Of course, a direct tax on imports and exports such as a license tax on the occupation of importing, a direct tax on sales of imports and exports, a tax on the actual doing of an import business, a direct tax on objects in process of importing or exporting, are constitutionally invalid under the Import-Export Clause. Brown v. Maryland, 1827, 12 Wheat. 419, 6 L.Ed. 678; Crew Levick Co. v. Pennsylvania, 245 U.S. 292, 38 S.Ct. 126, 62 L.Ed. 295; Anglo-Chilean Nitrate Sales Corp. v. Alabama, 288 U.S. 218, 53 S.Ct. 373, 77 L.Ed. 710; Spalding & Bros. v. Edwards, 262 U.S. 66, 43 S.Ct. 485, 67 L.Ed. 865; Hooven & Allison Co. v. Evatt, 324 U.S. 652, 65 S.Ct. 870, 89 L.Ed. 1252.
The tax here in question is not a direct tax on imports or exports like that of a State stamp tax upon bills of lading for the export of gold and silver; or a federal stamp tax on an export bill of lading for wheat exported; or an ad valorem tax on warehouse receipts issued on account of whiskey physically in a foreign country; or a federal stamp tax on charter parties exclusively for the carriage of cargoes from State ports to foreign countries; or a tax applied against contracts of marine insurance which were held to be an integral part of exportation. Almy v. California, 1861, 24 How. 169, 65 U.S. 169, 16 L.Ed. 644; Fairbank v. United States, 1901, 181 U.S. 283, 21 S.Ct. 648, 45 L.Ed. 862; Selliger v. Kentucky, 1909, 213 U.S. 200, 29 S.Ct. 449, 53 L.Ed. 761; United States v. Hooslef, 1915, 237 U.S. 1, 35 S.Ct. 459, 59 L.Ed. 813, Ann. Cas. 1916A, 286; Thames & Mersey Marine Insurance Co. v. United States, 1915, 237 U.S. 19, 35 S.Ct. 496, 59 L.Ed. 821, Ann. Cas. 1915D, 1087.
*215 In Wheeling, P. & Cincinnati Transport Company v. Wheeling, 1879, 99 U.S. 273, 25 L.Ed. 412, supra, the city of Wheeling imposed a personal property tax upon vessels in the amount of $.50 on each $100 of the assessed value thereof. These vessels were used in the import-export traffic. The tax was attacked. The Supreme Court in holding this tax valid and constitutional said in part: "Power to impose taxes for legitimate purposes resides in the States as well as in the United States; but the States cannot, without the consent of Congress, lay any duty of tonnage, nor can they levy any imposts or duties on imports or exports except what may be absolutely necessary for executing their inspection laws, as without the consent of Congress they are prohibited from exercising any such power. Outside of those prohibitions the power of the States extends to all objects within their sovereign power, except the means and instruments of the Federal Government. [In re] State Tonnage Tax Cases, 12 Wall. 204 [79 U.S. 204, 20 L.Ed. 370, 376]." One of the cases relied on by the Court in that opinion was the Maryland case of Howell v. State, 3 Gill 14.
In People of State of New York ex rel. Burke v. Wells, 1908, 208 U.S. 14, 28 S.Ct. 193, 52 L.Ed. 370, supra, the City of New York assessed for ad valorem personal property taxes, among other things, the cash on hand and notes owned by a foreign corporation doing business in New York State as importers, which were the proceeds of the sale of imported goods in the unbroken original packages. The Supreme Court of the United States held that these items could be taxed under the New York law as capital employed in business within the State without infringing Article I, Section 10, of the Constitution of the United States, although most of the proceeds of such sales were remitted to the home office of the corporation in Ireland.
In People ex rel. Parke, Davis & Co. v. Roberts, 1896, 171 U.S. 658, 19 S.Ct. 70, 43 L.Ed. 323, supra, it was held that a franchise tax on the amount of the capital *216 stock employed within the State by a foreign corporation conducting a strictly private business is not invalid because a part of its business consists of the importation and sale of articles in original packages. It was contended in that case that this tax was unconstitutional and invalid under the case of Brown v. Maryland, supra. In reply to that argument the Supreme Court of the United States said: "But that case is inapplicable. Here no tax is sought to be imposed directly on imported articles or on their sale. This is a tax imposed on the business of a corporation, consisting in the storage and distribution of various kinds of goods, some products of their own manufacture and some imported articles. From the very nature of the tax, being laid as a tax upon the franchise of doing business as a corporation, it cannot be affected in any way by the character of the property in which its capital stock is invested." (Italics supplied here.)
As herein stated the contested taxes here are for the years 1946 and 1947. Evidently the appellants rely largely on decisions of the Supreme Court of the United States since and beginning in 1946. Great reliance is placed by appellants on the case of Richfield Oil Corporation v. State Board, 1946, 329 U.S. 69, 67 S.Ct. 156, 164, 91 L.Ed. 80. The majority opinion was written by Mr. Justice Douglas with Mr. Justice Black dissenting. In that case by statute California levied a retail sales tax on certain oil "measured by the gross receipts of retail sales and levied on retailers `For the privilege of selling tangible personal property at retail'". The Richfield Oil Corporation contracted with the government of New Zealand for the sale of oil, f.o.b. Los Angeles. Payment was to be made in London. Delivery was made by Richfield by its own pipe lines from its refinery in California to storage tanks at the Los Angeles harbor and pumped directly from the storage tanks into a vessel owned by the New Zealand government, in the harbor of Los Angeles, and consigned to the Naval Officer-in-Charge at Auckland, New Zealand. No portion of the oil was *217 used or consumed in the United States. The Supreme Court of the United States, reversing the California Supreme Court, held that the oil became an export no later than when it was delivered into the vessel and when the passage of title by delivery of the oil into the vessel took place, the oil had become an export. This sales tax was therefore a direct tax upon an export and violated the Import-Export Clause. This case was very similar to and naturally followed the decision in Crew Levick Co. v. Pennsylvania, 245 U.S. 292, 38 S.Ct. 126, 62 L.Ed. 295, supra.
Joseph v. Carter & Weekes Stevedoring Co., 1947, 330 U.S. 422, 67 S.Ct. 815, 91 L.Ed. 993, involved a New York State occupation tax upon stevedoring measured by gross receipts from servicing ships at the port of New York. The goods moved both in interstate and foreign commerce. The Majority of the Supreme Court of the United States held that this tax violated the Commerce Clause of the Constitution but made no reference to the Import-Export Clause which was argued to the Court. The majority opinion was written by Mr. Justice Reed, concurred in by the Chief Justice, and Justices Frankfurter, Jackson, and Burton. Mr. Justice Black dissented totally from the majority opinion. Justices Douglas, Rutledge, and Murphy dissented on the proposition that the Commerce Clause was violated. Justices Douglas and Rutledge dissented from the invalidity of the tax under the Commerce Clause but were of opinion that it was invalid under the Import-Export Clause. This dissenting opinion was based upon the cases of Thames & Mersey Marine Ins. Co. v. United States, 237 U.S. 19, 35 S.Ct. 496, 59 L.Ed. 821, Ann. Cas. 1915D, 1087, supra; Spalding & Bros. v. Edwards, 262 U.S. 66, 43 S.Ct. 485, 67 L.Ed. 865, supra; Richfield Oil Corp. v. State Board, 329 U.S. 69, 67 S.Ct. 156, 91 L.Ed. 80, supra. The tax here before us is certainly not comparable under the Import-Export Clause to the following taxes before the Supreme Court in the last three cases cited: a tax applied against a contract of marine insurance *218 which is an integral part of exportation and so vitally connected therewith that a tax on the insurance policies is essentially a tax upon the export; a tax upon baseballs sold by a manufacturer in New York to a firm in Venezuela, marked for delivery to the purchaser in Venezuela and delivered to the carrier as directed by the purchaser; a sales tax upon oil as in the Richfield Oil case, supra.
Joy Oil Company v. State Tax Commission, 1949, 337 U.S. 286, 69 S.Ct. 1075, involved a personal property ad valorem tax. The gasoline on which the tax was levied was transported from Grand Rapids to Detroit, Michigan, for export, where it was placed in storage tanks from which it was to be shipped by water to Canada. On account of the inability of the taxpayer to obtain shipping space, the gasoline, except for 50,000 gallons exported, remained in Detroit for about fifteen months. The majority of the Supreme Court of the United States held that while the gasoline was stored in Detroit it did not constitute an export because it might have been used for domestic purposes. Four Justices dissented on the ground that all of the facts indicated that the gasoline would be exported. The minority opinion therefore was based on the fact that this was a direct tax on an export and therefore a violation of the Import-Export Clause. Another case involving an invalid direct tax on articles in export is Empresa Siderurgica, S.A. v. County of Merced, 1949, 337 U.S. 154, 69 S.Ct. 995. That case is not in point here.
It is argued that the Import-Export Clause should be given a more prohibitive effect than the Commerce Clause because of the fact that the former contains an express tax exemption whereas the latter does not. Neither clause literally supports the interpretations that have been put upon them by unchallenged decisions. The Commerce clause has been extended by implication to prohibit state exactions regardless of Federal regulation, and the Import-Export Clause has been extended to cover not only exactions upon the goods themselves but on the integral *219 parts of exportation. The solution of the problem as to where the line should be drawn can hardly depend on verbalism. We find no case dealing with the precise question now presented. On principle, we see no reason why a franchise tax measured by gross receipts, including receipts from foreign commerce, should be valid under one clause and not under the other, particularly where the tax is in lieu of other permitted taxes.
Decrees affirmed, with costs.
MARKELL, J., delivered the following dissenting opinion, in which DELAPLAINE, J., concurred.
On a federal question our duty is to follow the Supreme Court, not to try to lead it. In the fourth Texas primary case, Smith v. Allwright, 321 U.S. 649, 652, 64 S.Ct. 757, 759, 88 L.Ed. 987, 151 A.L.R. 1110, the court remarked that the district court had denied relief and "the Circuit Court of Appeals quite properly affirmed its action on the authority of Grovey v. Townsend, 295 U.S. 45, 55 S.Ct. 622, 79 L.Ed. 1292, 97 A.L.R. 680 [the third Texas primary case]." The court thereupon overruled Grovey v. Townsend and reversed the action "quite properly" taken by the lower court. We are not at liberty to guess about personalities, changes in personnel, or possible future changes in decisions, or to take the obscurantist attitude that determination of the present status of the authorities amounts to searching into the inscrutable and that we should therefore sustain the tax and let the Supreme Court strike it down if it will. As we have recently said, through Chief Judge Marbury, "If the Supreme Court did not mean what it said, or said more than it should, or what it should not have said, the responsibility is its and not ours." Goetz v. Smith, 191 Md. 707, 711, 62 A.2d 602, 604. We may, and should, compare opinions of the court with dissenting opinions to determine the line of demarcation between them and the scope of the decisions of the court.
*220 Cases under the Import-Export Clause are few in comparison with the multitude under the Commerce Clause. For the first 150 years of the operation of the Constitution the Import-Export Clause, approximately but to a fluctuating degree, covered in the same way part of the same field as the Commerce Clause. Consequently in a case involving the broader field of the Commerce Clause it was seldom necessary to discuss the Import-Export Clause at all. In Crew Levick Co. v. Commonwealth of Pennsylvania, 245 U.S. 292, 295, 38 S.Ct. 126, 127, 62 L.Ed. 295, in which the court held invalid a gross receipts tax on the business of selling goods in foreign commerce, it was said, "The bare question, then, is whether a state tax imposed upon the business of selling goods in foreign commerce, in so far as it is measured by the gross receipts from merchandise shipped to foreign countries, is in effect a regulation of foreign commerce or an impost upon exports, within the meaning of the pertinent clauses of the Federal Constitution. Although dual in form, the question may be treated as a single one, since it is obvious that, for the purposes of this case, an impost upon exports and a regulation of foreign commerce may be regarded as interchangeable terms." For the last ten years the field covered by the Import-Export Clause has, to an important extent, included taxes not prohibited by the Commerce Clause. The important difference between the coverage of the two clauses is not due to changes in decisions under the Import-Export Clause, with which we are here concerned, but to changes in decisions under the Commerce Clause with which fortunately we are not concerned. With one exception (which will now be mentioned but is not now material) there has been from the first no change in the decisions under the Import-Export Clause. In Brown v. Maryland, 1827, 12 Wheat. 419, 449, 6 L.Ed. 678, it was "supposed" and in Almy v. California, 1861, 24 How. 169, 16 L.Ed. 644, it was assumed, as the basis of an unanimous opinion, that the Import-Export Clause is applicable to "imports" and *221 "exports" from one state into another. In Woodruff v. Parham, 1869, 8 Wall. 123, 19 L.Ed. 382, these dicta were discarded and the clause held applicable only to imports from and exports to a foreign country.
On their face the Import-Export Clause and the Commerce Clause suggest two possible differences, (1) the Commerce Clause covers "commerce", the Import-Export Clause "imports" and "exports", which conceivably might be construed as meaning only the goods imported or exported, not the business or process of importation or exportation, (2) the Commerce Clause does not contain any express tax exemption, the Import-Export Clause does. In Brown v. Maryland, supra, the first case under the Import-Export Clause, the first possible difference was negatived. That clause ever since has been construed as exempting from taxation not only the goods imported or exported, but the business and the process of importation or exportation. The second possible difference was never completely excluded, for about 150 years in a varying degree was almost eliminated, but in the last ten years has been definitely affirmed.
Until 1869 the Import-Export Clause was assumed to give an express tax exemption to transportation in foreign or interstate commerce. In 1873 there were decided the State Freight Tax, 15 Wall. 232, 21 L.Ed. 146, and the State Tax on Railway Gross Receipts, 15 Wall. 284, 21 L.Ed. 164, the former holding invalid a tax on freight, including interstate freight, at graduated rates per ton on different articles, the second sustaining a Pennsylvania tax on railway gross receipts, including receipts from interstate commerce. The opinions in both cases were delivered by the same justice, but only four justices concurred in both decisions, which were essentially irreconcilable. After repeated subsequent decisions consistent with the State Freight Tax, the State Tax on Railway Gross Receipts was in effect overruled in Philadelphia & Southern M. Steamship Co. v. Pennsylvania, 1887, 122 U.S. 326, 7 S.Ct. 1118, 30 L.Ed. 1200.
*222 Thereafter until about ten years ago it was held that interstate commerce, and specifically gross receipts from such commerce, were exempt from state taxation, with one important but elusive exception, viz., a gross receipts tax, by whatever name called, if it amounts to no more than the ordinary tax upon property or a just equivalent therefor is not unconstitutional. State of Maine v. Grand Trunk Railroad Co., 1891, 142 U.S. 217, 12 S.Ct. 121, 163, 35 L.Ed. 994, as explained in Postal Telegraph Cable Co. v. Adams, 1895, 155 U.S. 688, 15 S.Ct. 360, 39 L.Ed. 311, and Galveston, Harrisburg & San Antonio Railway Co. v. Texas, 1908, 210 U.S. 217, 23 S.Ct. 638, 52 L.Ed. 1031. Such a permitted tax has been called a commutation tax, 210 U.S. at page 226, 28 S.Ct. at page 639, and, by counsel in the instant case, an "in lieu" tax. For about ten years, beginning with McGoldrick v. Berwind-White Coal Mining Co., 1940, 309 U.S. 33, 60 S.Ct. 388, 84 L.Ed. 565, 128 A.L.R. 876, the court has narrowed the effect of the Commerce Clause as prohibiting taxes which burden interstate commerce. The court still holds that, "From the Commerce Clause itself, there comes * * * an abridgment of the state's power to tax within its territorial limits. This has arisen from long-continued judicial interpretation that, without congressional action, the words themselves of the Commerce Clause forbid undue interferences by the States with interstate commerce[4] and that this rule applies in full force to an unapportioned[5] tax on the gross proceeds from interstate business[6] where the taxes were not in lieu of ad valorem taxes on property.[7] [Citing cases in footnotes 4, 5, 6 and 7.]" Joseph v. Carter & Weakes Stevedoring Co., 330 U.S. 422, 427, 67 S.Ct. 815, 818, 91 L.Ed. 993. In the case just quoted a state tax on the gross receipts of a stevedoring corporation from work on ships engaged in interstate and foreign commerce was held unconstitutional under the Commerce Clause. The statement quoted is appreciably narrower than it might have been before the Berwind-White case.
*223 In Richfield Oil Corporation v. State Board of Equalization, 329 U.S. 69, 67 S.Ct. 156, 160, 91 L.Ed. 80, decided a few months before the Joseph case, the court indicated the change that had occurred in the recent Commerce Clause cases, and, what is more important and, I think, decisive in the instant case, the difference in this respect between the Commerce Clause and the Import-Export Clause. "* * * the Commerce Clause is cast, not in terms of a prohibition against taxes, but in terms of a power on the part of Congress to regulate commerce. It is well established that the Commerce Clause is a limitation upon the power of the States, even in absence of action by Congress. [Citing cases]. But the scope of the limitation has been determined by the Court in an effort to maintain an area of trade free from state interference and at the same time to make interstate commerce pay its way. As recently stated in McGoldrick v. Berwind-White Coal Mining Co., supra, 309 U.S. at page 48, 60 S.Ct. 388, 84 L.Ed. 565, 128 A.L.R. 876, the law under the Commerce Clause has been fashioned by the Court in an effort `to reconcile competing constitutional demands, that commerce between the states shall not be unduly impeded by state action, and that the power to lay taxes for the support of state government shall not be unduly curtailed.' That accommodation has been made by upholding taxes designed to make interstate commerce bear a fair share of the cost of the local government from which it receives benefits (see e.g. Western Live Stock v. Bureau of Revenue, 303 U.S. 250, 254-255, 58 S.Ct. 546, 548, 549, 82 L.Ed. 823, 115 A.L.R. 944, and cases cited; McGoldrick v. Berwind-White Coal Mining Co., supra) and by invalidating those which discriminate against interstate commerce, which impose a levy for the privilege of doing it, which place an undue burden on it. [Citing cases]." After thus describing the somewhat tenuous line between taxes which are prohibited and those which are permitted under the Commerce Clause, the court then makes plain *224 that there is no exception at all from the unqualified tax exemption under the Import-Export Clause.
"It seems clear that we cannot write any such qualification into the Import-Export Clause. It prohibits every State from laying `any' tax on imports or exports without the consent of Congress. Only one exception is created  `except what may be absolutely necessary for executing its inspection Laws.' The fact of a single exception suggests that no other qualification of the absolute prohibition was intended. It would entail a substantial revision of the Import-Export Clause to substitute for the prohibition against `any' tax a prohibition against `any discriminatory' tax. As we shall see, the question as to what is exportation is somewhat entwined with the question as to what is interstate commerce. But the two clauses, though complementary, serve different ends. And the limitations of one cannot be read into the other." 329 U.S. at pages 75-76, 67 S.Ct. at page 160.
"We cannot, therefore, read the prohibition against `any' tax on exports as containing an implied qualification." 329 U.S. at page 78, 67 S.Ct. at page 161. In the Richfield case the court held unconstitutional under the Import-Export Clause application of a California gross receipts sales tax to an export shipment.
As a decision under the Import-Export Clause the Richfield case is not qualified, but reaffirmed, by the Joseph case. In the Joseph case five justices broadened the invalidation of the tax to include interstate commerce as well as imports and exports, seven condemned it as to imports and exports. It is impossible to escape Professor Powell's interpretation of the opinions in this respect. 60 Harvard Law Review 744. Though the majority opinion does not mention the Import-Export Clause it cites the Crew Levick case to the very page quoted, supra, where the court said the two questions were one. Reason and authority may be surveyed in vain without finding any ground for holding that a tax, invalid under the Commerce Clause, could be valid, as to imports or exports, under the Imports-Exports Clause.
*225 A tax on gross receipts from carriage of goods is manifestly a tax on exportation. Transportation is not an incident, direct or indirect, of commerce or exportation. It is commerce and exportation. The Export Clause (as far as it goes) is identical in scope with the Import-Export Clause. In Thames & Mersey Marine Ins. Co. v. United States, 237 U.S. 19, 35 S.Ct. 496, 59 L.Ed. 821, Ann. Cas. 1915D, 1087, a stamp tax on marine insurance policies on exports was held unconstitutional. The court said, "The rise in rates for insurance as immediately affects exporting as an increase in freight rates, and the taxation of policies insuring cargoes during their transit to foreign ports is as much a burden on exporting as if it were laid on the charter parties, the bills of lading, or the goods themselves. Such taxation does not deal with preliminaries, or with distinct or separable subjects; the tax falls upon the exporting process." 237 U.S. at page 27, 35 S.Ct. at page 499. The major premise, that a tax on freight is a tax on exports, was taken as axiomatic.
Under the Commerce Clause, since the recent cases and perhaps before, it may be that the Maryland gross receipts tax is constitutional as an "in lieu" tax. Canton, but not Western Maryland, disputes this proposition on the facts, but the fact question, I think, is not adequately presented on the record. So far as imports and exports are concerned, the question as to the Commerce Clause is immaterial. In the Import-Export Clause "the prohibition against `any' tax on imports and exports contains no implied qualification." It matters not, therefore, what is the present scope or extent of the "in lieu" qualification or exception to the cases condemning gross receipts taxes under the Commerce Clause. Before the instant cases no question as to the constitutionality of the gross receipts tax under the Import-Export Clause has ever been raised.
I think the tax, as to imports and exports, is unconstitutional and the judgment should be reversed.
Judge Delaplaine authorizes me to say that he concurs in this opinion.